BRYANT, Judge.
 

 Where defendant, an electric cooperative, did not owe plaintiffs a fiduciary duty with regard to the discounting of capital credits and plaintiffs' claims are otherwise barred by the statute of limitations or were released pursuant to N.C. Gen. Stat. § 28A-25-6(e), the trial court did not err in granting defendant's motions for summary judgment, and we affirm the orders of the trial court.
 

 Defendant South River Electric Membership Corporation ("SREMC", or "the Cooperative"), is a nonprofit electric membership cooperative organized and existing pursuant to the laws of the North Carolina Rural Electrification Authority. Headquartered in Harnett County, North Carolina, SREMC provides electric service to members in Sampson, Harnett, Cumberland, Johnston, and Bladen Counties.
 

 SREMC sets a retirement cycle for capital credits, "annually allocat[ing] to each Member ... Operating Margins from the Cooperative Service in proportion to the value or quantity of the Cooperative Service used, received, or purchased by each member during the applicable fiscal year ('Capital Credits')." SREMC makes capital credit retirements nineteen years after the year in which the credits were assigned. SREMC's Board (the "Board") "determine[s] the method, basis, priority, and order of retiring and refunding Capital Credits...." There is no fixed time by which capital credits must be retired and all members and former members have a personal property interest in their accumulated capital credits.
 

 When a member or former member dies owning capital credits, that member's accumulated capital credits become property of the deceased member's estate. A deceased member's personal representative may request, and the Board may authorize, a special retirement of the deceased member's accumulated capital credits. Prior to a 2001 resolution, SREMC had made special retirements of capital credits to the estates of deceased former members on a non-discounted basis. In March 2001, the Board unanimously passed a resolution "that all capital credits to estates of members dying after June 30, 2001, shall be calculated based on a 6% discount rate and a discount period equal to the number of years of patronage capital then outstanding." On 4 June 2001, the Board amended the Cooperative's bylaws (the "2001 bylaws") and approved a policy of discounting special retirements to the estates of deceased former members, to be "calculated on a discount rate equal to the Wall Street Journal Prime Rate as of December 31 of each applicable year ...." As a result, from August 2001 until December 2002, SREMC discounted special or early retirements of capital credits using a 6% annual discount rate. Then, in January 2003, SREMC began using a discount rate based on the Wall Street Journal Prime Rate as of 31 December of the previous year.
 

 The 2001 bylaws allowed the Board to authorize the Cooperative to wholly or partially retire and refund capital credits to members and former members. SREMC does not notify members on each occasion when changes are made to the bylaws and it did not provide notice concerning the 4 June 2001 changes.
 

 On 4 May 1976, J.J. (Jay) Faircloth died intestate, a citizen and resident of Cumberland County, North Carolina, survived by his widow, Lillie M. Faircloth, who inherited Jay's capital credits. Lillie M. Faircloth McLelland ("McLelland") died testate on 8 December 1999, prior to the changes made to SREMC's discounting policy. At the time of her death in 1999, McLelland, then citizen and resident of Lenoir County, North Carolina, owned accumulated capital credits of $1,117.17.
 

 On 8 October 2002, SREMC paid the sum of $1,117.17 to the Lenoir County Clerk of Court for McLelland. SREMC did not apply a discount to McLelland's capital credits, nor did it retain any portion of them. This is the only instance in which a deceased former
 
 *350
 
 member's capital credits were not discounted once SREMC began its discounting program.
 

 From January 2003 onwards, the annual discount rate was based on the WSJ Prime Rate as of December 31 of the previous year. During calendar year 2003, SREMC used a 4.25% annual discount rate for discounting capital credits to the estates of deceased members.
 

 Ellen Dudley Spell ("Ellen"), deceased, was a citizen and resident of Sampson County and a member of SREMC at the time of her death on 3 October 2002. She owned $695.22 of capital credits. On 22 October 2002, Ellen's daughter applied for Ellen's capital credits. SREMC prepared a form titled "Request for Refund of Capital Credit Allocation to Estate of Deceased Member," which stated as follows:
 

 I understand that this Application represents a request for an early retirement of the stated capital credits and that a discount factor (as approved by the Cooperative's Board of Directors) will apply to this requirement and refund. The present discount factor is 6%.
 

 SREMC discounted the $695.22 in capital credits by $398.66 at retirement, using the 6% annual discount rate in effect at that time. As a result, SREMC returned $296.56 of the $695.22 in accumulated capital credits to Ellen's estate (the "EDS Estate"), and accrued $398.66 to its "net savings."
 

 Sulie Daniels Spell ("Sulie"), also deceased, was a citizen and resident of Sampson County and a member of SREMC at the time of her death on 28 April 2009. She owned $221.55 of capital credits. Sulie's son applied for Sulie's capital credits, using the same form described above, except the "present discount factor" was listed as "3.25%." SREMC discounted Sulie's capital credits by $94.79, leaving $126.76 to be paid to the clerk of court for Sulie's estate (the "SDS Estate"). As a result, SREMC accrued $94.79 to its "net savings."
 

 On 7 February 2011, plaintiff Andrew M. Jackson, a citizen and resident of Sampson County, North Carolina, was appointed Administrator of both the EDS and SDS Estates by the Clerk of Superior Court of Sampson County, North Carolina. On 9 February 2011, Jackson filed a complaint in Sampson County against SREMC. Styled as a class action, plaintiffs are the EDS and SDS Estates. The complaint included claims for declaratory judgment, breach of fiduciary duty, conversion, unjust enrichment, unfair or deceptive trade practices ("UDTP"), and breach of contract,
 
 [1]
 
 all related to SREMC's retirement of capital credits. On 25 August 2011, Ted B. Lockerman was substituted as Administrator of the EDS and SDS Estates and as plaintiff in this action. Thereafter, SREMC removed the case to the Business Court, where it was assigned to the Honorable James L. Gale. On October 21, 2011, Judge Gale entered a Phase One Case Management Order.
 

 In December 2011, SREMC filed and served two motions for partial summary judgment, both of which were granted. In granting its first motion, the trial court acknowledged that SREMC could legally discount capital credits of deceased members when the credits are retired early. Plaintiffs do not appeal this ruling.
 

 In granting SREMC's second motion, the trial court concluded that SREMC has no "fiduciary duty" to its members when retiring capital credits. Plaintiffs' initial appeal of that ruling was dismissed as interlocutory per opinion of this Court on 6 August 2013.
 
 Lockerman v. S. River Elec. Membership Corp.
 
 , No. COA12-1450,
 
 2013 WL 4006997
 
 (N.C. Ct. App. Aug. 6, 2013) (unpublished).
 

 SREMC filed a third summary judgment motion, seeking a ruling on all remaining claims. Plaintiffs filed their response, and the trial court heard the pending motions on 6 October 2014. In its Opinion and Final Judgment, the trial court granted SREMC's third motion for summary judgment, dismissing with prejudice all of plaintiffs' remaining claims based on the statutes of limitations. Plaintiffs appeal.
 

 _________________________
 

 On appeal, plaintiffs argue that the trial court erred in granting defendant SREMC's
 
 *351
 
 (I) second and (II) third motions for summary judgment.
 

 I
 

 Plaintiffs first argue that the trial court erred in granting SREMC's second motion for summary judgment by ruling that, as a matter of law, SREMC owes no fiduciary duties to plaintiffs' estates and those similarly situated regarding the "retirement" of capital credits. Specifically, plaintiffs contend that SREMC owes fiduciary duties based either upon its legal relationship with its members (
 
 de jure
 
 ) or upon evidence sufficient to allow a finder of fact to find a special relationship of trust and confidence (
 
 de facto
 
 ). We disagree.
 

 "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' "
 
 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008) (quoting
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 523-24,
 
 649 S.E.2d 382
 
 , 385 (2007) ).
 

 A "fiduciary relation" is one that "may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence."
 
 Abbitt v. Gregory
 
 ,
 
 201 N.C. 577
 
 , 598,
 
 160 S.E. 896
 
 , 906 (1931). "In less clearly defined situations the question whether a fiduciary relationship exists is more open and depends ultimately on the circumstances. Courts have historically declined to offer a rigid definition of a fiduciary relationship in order to allow imposition of fiduciary duties where justified."
 
 HAJMM Co. v. House of Raeford Farms, Inc. (HAJMM Co. II
 

 )
 
 ,
 
 328 N.C. 578
 
 , 588,
 
 403 S.E.2d 483
 
 , 489 (1991) (citation omitted). "Thus, the relationship can arise in a variety of circumstances, and may stem from varied and unpredictable facts."
 

 Id.
 

 (internal citation omitted).
 

 In North Carolina, a fiduciary duty can arise by operation of law (
 
 de jure
 
 ) or based on the facts and circumstances (
 
 de facto
 
 ):
 

 [The fiduciary duty] not only includes all legal relations [ (
 
 de jure
 
 ) ], such as attorney and client, broker and principal, executor or administrator and heir, legatee or devisee, factor and principal, guardian and ward, partners, principal and agent, trustee and
 
 cestui que trust
 
 , but it extends to any possible case in which a fiduciary relation exists in fact, and in which there is a confidence reposed on one side, and resulting domination and influence on the other [ (
 
 de facto
 
 ) ].
 

 Abbitt
 
 ,
 
 201 N.C. at 598
 
 ,
 
 160 S.E. at 906
 
 (citation omitted).
 

 As plaintiffs and SREMC do not stand in a legal relationship which imposes a
 
 de jure
 
 fiduciary relationship, we must determine whether plaintiffs have adequately asserted a
 
 de facto
 
 fiduciary relationship. "Whether such a relationship exists is generally a question of fact for the jury."
 
 Carcano v. JBSS, LLC
 
 ,
 
 200 N.C.App. 162
 
 , 178,
 
 684 S.E.2d 41
 
 , 53 (2009) (citation omitted). However, this Court can determine the adequacy of the evidence to support such a jury finding as a matter of law.
 
 See
 

 Pacheco v. Rogers & Breece, Inc.
 
 ,
 
 157 N.C.App. 445
 
 , 452,
 
 579 S.E.2d 505
 
 , 510 (2003) ("Determination of whether a particular set of facts establishes the existence of a fiduciary duty may present a question of law for the court." (citations omitted)).
 

 "Common to [a
 
 de jure
 
 fiduciary] relationship[ ] is a heightened level of trust and the duty of the fiduciary to act in the best interests of the other party."
 
 Dallaire v. Bank of Am., N.A.
 
 ,
 
 367 N.C. 363
 
 , 367,
 
 760 S.E.2d 263
 
 , 266 (2014). By contrast, other relationships, like those of debtor-creditor,
 
 Sec. Nat'l Bank of Greensboro v. Educators Mut. Life Ins. Co.
 
 ,
 
 265 N.C. 86
 
 , 95,
 
 143 S.E.2d 270
 
 , 276 (1965) ("There was no fiduciary relationship; the relation was that of debtor and creditor."), and employer and employee,
 
 Dalton v. Camp
 
 ,
 
 353 N.C. 647
 
 , 651-52,
 
 548 S.E.2d 704
 
 , 707-08 (2001) (holding that "the nature of virtually all employer-employee relationships[,] without more ... [is] inadequate to establish [an at-will employee's]
 

 *352
 
 obligations as fiduciary in nature"), will not typically give rise to fiduciary duties.
 

 Accordingly, we must determine whether plaintiffs have presented sufficient facts that indicate the relationship between plaintiffs and SREMC was "one in which 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence....' "
 
 Dalton
 
 ,
 
 353 N.C. at 651
 
 ,
 
 548 S.E.2d at 707
 
 (quoting
 
 Abbitt
 
 ,
 
 201 N.C. at 598
 
 ,
 
 160 S.E. at
 
 906 ).
 

 The standard for finding a
 
 de facto
 
 fiduciary relationship is a demanding one: "Only when one party figuratively holds all the cards-all the financial power or technical information, for example-have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen."
 
 S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC
 
 ,
 
 189 N.C.App. 601
 
 , 613,
 
 659 S.E.2d 442
 
 , 451 (2008) (quoting
 
 Broussard v. Meineke Discount Muffler Shops, Inc.
 
 ,
 
 155 F.3d 331
 
 , 348 (4th Cir. 1998) ).
 

 In
 
 HAJMM Co. II
 
 , the plaintiff, a limited partnership and for-profit corporation, sought damages for,
 
 inter alia
 
 , breach of fiduciary duty based on the defendants' (an agricultural cooperative) allegedly improper refusal to redeem "revolving fund certificates" issued by the defendant-co-op to the plaintiff.
 
 328 N.C. at 579-80
 
 ,
 
 403 S.E.2d at 485
 
 . The defendant-co-op in
 
 HAJMM Co. II
 
 was capitalized in part when the plaintiff and two other turkey producers sold to the defendant-co-op all their stock in Raeford Turkey Farms, Inc. ("RTF").
 

 Id.
 

 at 580
 
 ,
 
 403 S.E.2d at 485
 
 . As part of the consideration for selling their interests in RTF to the defendant-co-op, the plaintiff received revolving fund certificates, which became part of the defendant's capital structure and were categorized as stockholder's equity.
 

 Id.
 

 The certificates noted they were subject to the company's bylaws, and were "retirable in the sole discretion of the board of directors, either fully or on a pro rata basis."
 

 Id.
 

 at 581
 
 ,
 
 403 S.E.2d at 485-86
 
 . The plaintiff's $387,500 certificate was not retired and continued to be carried on the defendant's books as part of its capital structure.
 

 Id.
 

 at 581
 
 ,
 
 403 S.E.2d at 486
 
 . When the plaintiff demanded payment on the certificate, the defendant refused, even though the plaintiff's evidence showed that the defendant-co-op had been profitable during the relevant time period, held $3.4 million in outside securities, and had $922,000 cash on hand.
 

 Id.
 

 at 582
 
 ,
 
 403 S.E.2d at 486
 
 . At the close of evidence at trial, the trial court submitted issues to the jury and received,
 
 inter alia
 
 , the following answer: "Do the defendants ... owe a fiduciary duty to the plaintiff, HAJMM? Yes."
 

 Id.
 

 On appeal to this Court, the defendants argued the trial court erred in submitting to the jury the issue of whether the defendants owed plaintiff a fiduciary duty.
 
 HAJMM Co. v. House of Raeford Farms, Inc. (HAJMM Co. I)
 
 ,
 
 94 N.C.App. 1
 
 , 11,
 
 379 S.E.2d 868
 
 , 874 (1989),
 
 aff'd in part as modified, rev'd in part by
 

 HAJMM Co. II
 
 ,
 
 328 N.C. 578
 
 ,
 
 403 S.E.2d 483
 
 (1991). This Court disagreed and, in affirming in part and reversing in part this Court's decision in
 
 HAJMM Co. I
 
 , the N.C. Supreme Court noted as follows:
 

 The jury's determination on the fiduciary relationship issue rested on
 
 substantial and compelling competent evidence that plaintiff placed special confidence and trust in [the] defendants when it agreed to accept the revolving fund certificate in return for its interest in RTF and that with regard to the certificate, [the] plaintiff justifiably expected [the] defendants to deal fairly
 
 . It rested also on the factual characteristics of the certificate itself, about which there is little or no dispute. The dispute regarding the certificate has revolved around the legal effect to be given its characteristics.
 

 HAJMM Co. II
 
 ,
 
 328 N.C. at 590
 
 ,
 
 403 S.E.2d at 491
 
 (emphasis added). Our Supreme Court also noted that the legal dispute regarding the certificate had been resolved by the Court of Appeals favorable to the plaintiff who "contended the certificate evidenced enough of an equity interest in [the defendant-co-op] to lead as a matter of law to the creation of a fiduciary relation between the parties[,]" and, because the Supreme Court chose not to review this issue, it "thus bec[ame] the law of the case."
 

 Id.
 

 ;
 
 see also
 

 *353
 

 HAJMM Co. I
 
 ,
 
 94 N.C.App. at 11-12
 
 ,
 
 379 S.E.2d at 874
 
 .
 

 Here, SREMC's decisions regarding discounting early-retired capital credits do not support a finding that SREMC owed plaintiffs a fiduciary duty. Unlike the plaintiff in
 
 HAJMM Co. I
 
 &
 
 II
 
 , plaintiffs in the instant case cannot show that SREMC "figuratively [held] all the cards[.]"
 
 Broussard
 
 ,
 
 155 F.3d at 348
 
 (citation omitted).
 

 First, no member or representative of a deceased member is required to have a capital credit retired early: "Upon the death of any Member ...
 
 and pursuant to a written request from the Deceased Member's legal representative
 
 , the Board may retire the Deceased Member's Capital Credits ... under the terms and conditions agreed upon by the Deceased Member's legal representative and the Cooperative." Indeed, plaintiffs shared some control with SREMC over the retirement transaction as SREMC "currently makes general capital credit retirements on a dollar for dollar basis 19 years after the year for which the operating margins were allocated." Plaintiffs retained the right to choose whether to receive an early payout or wait for payout when the credits reached their date of maturity.
 

 Thus, as plaintiffs were required to submit a written request on behalf of their deceased members in order to receive capital credits before their date of maturity, plaintiffs' participation in early capital credit retirement was entirely voluntary. Furthermore, SREMC's members have no guarantee that their credits will be retired early, even upon written request-the bylaws provide for redeeming capital credits only where "the financial condition of the Cooperative will not be impaired thereby."
 
 See
 

 Four Cnty. Elec. Membership Corp. v. Powers
 
 ,
 
 96 N.C.App. 417
 
 , 420, 425,
 
 386 S.E.2d 107
 
 , 109, 112 (1989) ( "Unlike funds received from the sale of stocks and bonds, monies ultimately termed patronage capital by [a federal tax-exempt entity] are merely part of the gross receipts received for the sale of electricity when billings are rendered. Patronage capital ultimately owed to ... members is at the time of receipt uncertain as to both amount and fact of liability.").
 
 [2]
 

 Unlike the issuance of the certificate in
 
 HAJMM Co. I
 
 , which was held to be more indicative of a corporation/shareholder relationship,
 
 94 N.C.App. at 11
 
 ,
 
 379 S.E.2d at 874
 
 , here, members of SREMC "receive no interest or dividends on their capital credits" and retained some control over the capital credit retirement process. The plaintiff in
 
 HAJMM Co.
 
 , on the other hand, retained no control over the issuance of his certificate-his certificate was retirable only at the discretion of the defendant-co-op board.
 
 HAJMM Co. II
 
 ,
 
 328 N.C. at 581
 
 ,
 
 403 S.E.2d at 486
 
 .
 

 Second, plaintiffs cannot show evidence that SREMC exerted such "dominion and control" such that it must be held accountable as a fiduciary where plaintiffs were sufficiently on notice regarding SREMC's discounting program. The request form submitted by plaintiffs disclosed on its face that a discount factor would be applied in determining the amount of capital credit to be refunded. Each application signed by plaintiffs included this notice, even if the amount to be discounted was not filled in until after plaintiffs signed and returned their applications. Additionally, the Bylaws outlining the discount policy were available to plaintiffs at any time upon request, even if SREMC does not generally provide notification to its members on each occasion when there are changes made to the bylaws, and it did not do so concerning the 4 June 2001 changes.
 

 *354
 
 Thus, as plaintiffs retained some control over the retirement transaction and were sufficiently on notice that early-retired capital credits would be subject to discounting, plaintiffs here have not presented adequate evidence such that a jury could find there was "substantial and compelling competent evidence that plaintiff[s] placed special confidence and trust in defendant[ ]," nor that they "justifiably expected defendant[ ] to deal fairly."
 

 Id.
 

 at 590
 
 ,
 
 403 S.E.2d at 491
 
 . Thus, the trial court did not err in concluding that the facts established by the record "did not create a special relationship that rise[s] to the level necessary to impose fiduciary duties on SREMC" with respect to plaintiff's estates and those similarly situated regarding the retirement of their capital credits. Plaintiffs' argument, that the trial court erred by granting SREMC's second motion for summary judgment, is overruled.
 

 II
 

 Plaintiffs lastly argue that the trial court erred in granting SREMC's third motion for summary judgment, ruling that plaintiffs' remaining claims were barred by the statutes of limitations or were otherwise not supported by a sufficient forecast of the evidence. Specifically, plaintiffs contend that (1) the EDS Estate's claims for conversion, unjust enrichment, UDTP, and breach of contract are not time barred and (2) the SDS Estate's claims are not barred by the clerk's acceptance of payment and are otherwise supported by sufficient evidence. We disagree.
 

 This Court reviews an appeal from a summary judgment order
 
 de novo
 
 .
 
 In re Will of Jones
 
 ,
 
 362 N.C. at 573
 
 ,
 
 669 S.E.2d at 576
 
 .
 

 1. Plaintiff EDS Estate's Claims
 

 This action was initiated on 9 February 2011. The discounted balance of plaintiff EDS Estate's capital credits was paid out by SREMC more than eight years prior to that date on 9 December 2002. "After a defendant pleads the statute of limitations, the plaintiff has the burden of demonstrating she brought the action within the applicable limitation period."
 
 Stratton v. Royal Bank of Canada
 
 ,
 
 211 N.C.App. 78
 
 , 81,
 
 712 S.E.2d 221
 
 , 226 (2011) (citation omitted). "Whether a claim is time-barred is a mixed question of law and fact."
 

 Id.
 

 (citation omitted). "If a plaintiff's claim is barred by the running of the applicable statute of limitations, summary judgment in favor of a defendant is appropriate."
 
 ABL Plumbing & Heating Corp. v. Bladen Cnty. Bd. of Educ.
 
 ,
 
 175 N.C.App. 164
 
 , 168,
 
 623 S.E.2d 57
 
 , 59 (2005) (citation omitted).
 

 A.
 
 Conversion
 

 Plaintiffs assert that discounting capital credits to their present value constitutes conversion. We disagree.
 

 Conversion claims are subject to a three-year statute of limitations running from the date of the alleged wrongful conduct.
 
 N.C. Gen. Stat. § 1-52
 
 (4) (2015).
 

 A claim for conversion "requires (1) an unauthorized assumption and exercise of right of ownership over property belonging to another and (2) a wrongful deprivation of it by the owner, regardless of the subsequent application of the converted property."
 
 N.C. State Bar v. Gilbert
 
 ,
 
 189 N.C.App. 320
 
 , 324,
 
 663 S.E.2d 1
 
 , 4 (2008) (citation omitted). Generally, a claim for conversion accrues when "some act is done which is a denial or violation of the plaintiff's dominion over or rights in the property."
 
 Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co., Inc.
 
 ,
 
 192 N.C.App. 74
 
 , 86,
 
 665 S.E.2d 478
 
 , 489 (2008) (quoting
 
 Lake Mary Ltd. P'ship v. Johnston
 
 ,
 
 145 N.C.App. 525
 
 , 532,
 
 551 S.E.2d 546
 
 , 552 (2001) ). However, where a person or entity has lawfully obtained possession, the true owner must demand return of the goods and receive an absolute refusal to surrender them.
 
 See
 

 Hoch v. Young
 
 ,
 
 63 N.C.App. 480
 
 , 483,
 
 305 S.E.2d 201
 
 , 203 (1983) (citation omitted).
 

 Here, plaintiff EDS Estate applied for a refund of its capital credits on 22 October 2002. On 9 December 2002, SREMC discounted the capital credit balance and paid the EDS Estate the discounted amount of $215.79. In connection with the special retirement of these capital credits, SREMC accrued $398.66 to its "net savings." Plaintiff EDS Estate made no further request that
 
 *355
 
 SREMC refund the amount it retained at that time.
 

 On these facts, a conversion claim would have accrued when and if SREMC had retained (or refused to surrender) the discounted portion of retired capital credits in response to plaintiff's demand for the same. Accordingly, the three-year statute of limitations had run by 9 December 2005, well before the initiation of this action on 9 February 2011, and plaintiff EDS Estate's claim for conversion is time-barred.
 

 B.
 
 Unjust Enrichment
 

 "A claim for unjust enrichment must be brought within three years of accrual under subsection 1 of [N.C. Gen. Stat. §] 1-52."
 
 Stratton
 
 ,
 
 211 N.C.App. at 85
 
 ,
 
 712 S.E.2d at
 
 228 (citing
 
 Housecalls Home Health Care, Inc. v. State
 
 ,
 
 200 N.C.App. 66
 
 , 70,
 
 682 S.E.2d 741
 
 , 744 (2009) ). To the extent plaintiff EDS Estate's unjust enrichment claims are premised upon its conversion theories, this claim is also subject to a three-year statute of limitations.
 
 See
 

 id.
 
 at 85,
 
 712 S.E.2d at 228-29
 
 (holding that statute of limitations for unjust enrichment and conversion claims applied, rather than statute of limitations that applied to claims seeking relief on the ground of fraud or mistake where heir of estate was in essence pursuing a conversion claim). As such, plaintiff EDS Estate's claim for unjust enrichment is time-barred.
 

 C.
 
 Unfair or Deceptive Trade Practices ("UDTP")
 

 A UDTP claim must be brought within four years of the accrual of the cause of action.
 
 N.C. Gen. Stat. § 75-16.2
 
 (2015) ;
 
 see
 

 N.C. Gen. Stat. § 75-1.1
 
 (a) (2015) ("[U]nfair or deceptive acts or practices in or affecting commerce, are declared unlawful."). A UDTP claim based on fraud accrues only "at the time the fraud is discovered, or
 
 should have been discovered
 
 with the exercise of reasonable diligence."
 
 Trantham v. Michael L. Martin, Inc.
 
 ,
 
 228 N.C.App. 118
 
 , 126,
 
 745 S.E.2d 327
 
 , 334 (2013) (quoting
 
 Nash v. Motorola Commc'ns & Elecs., Inc.
 
 ,
 
 96 N.C.App. 329
 
 , 331,
 
 385 S.E.2d 537
 
 , 538 (1989) ). Applying that limitations period here, all UDTP claims based on payment of capital credits prior to 9 February 2007 are time-barred.
 

 D.
 
 Breach of Contract
 

 Claims based upon a contract are subject to a three-year statute of limitations. N.C.G.S. § 1-52(1). "It is a well-settled rule in North Carolina that a cause of action for breach of contract accrues, and the statute of limitations period begins to run, '[a]s soon as the injury becomes apparent to the claimant or should reasonably become apparent[.]' "
 
 ABL Plumbing
 
 ,
 
 175 N.C.App. at 168
 
 ,
 
 623 S.E.2d at 59
 
 (alteration in originals) (quoting
 
 Liptrap v. City of High Point
 
 ,
 
 128 N.C.App. 353
 
 , 355,
 
 496 S.E.2d 817
 
 , 819 (1998) ).
 

 Plaintiffs' brief asserts only that its varying claims, including breach of contract, should not be time-barred based on the doctrine of equitable estoppel,
 
 see infra
 
 Section 1.E., and the trial court's order notes that plaintiffs' brief to the trial court "pose[d] no opposition to SREMC's assertion that the [EDS] [E]state's breach of contract claim should be time-barred." Accordingly, we affirm the trial court's ruling that the breach of contract claim is also time-barred.
 

 E.
 
 Equitable Estoppel
 

 Plaintiffs claim that SREMC should be equitably estopped from asserting the statute of limitations as a defense to the above claims on behalf of the EDS Estate. For the following reasons, we disagree.
 

 "[A] defendant may properly rely upon a statute of limitations as a defensive shield against 'stale' claims, but may be equitably estopped from using a statute of limitations as a sword, so as to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit."
 
 Friedland v. Gales
 
 ,
 
 131 N.C.App. 802
 
 , 806,
 
 509 S.E.2d 793
 
 , 796 (1998) (citations omitted).
 

 The essential elements of estoppel are (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the
 
 *356
 
 defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice.
 

 Id.
 

 at 807
 
 ,
 
 509 S.E.2d at 796-97
 
 (quoting
 
 Parker v. Thompson-Arthur Paving Co.
 
 ,
 
 100 N.C.App. 367
 
 , 370,
 
 396 S.E.2d 626
 
 , 628-29 (1990) ).
 

 Here, plaintiffs would need to show the EDS Estate lacked knowledge and the means of ascertaining the real facts, in 2002, concerning the discount rate established by the Board in the Bylaws. However, the EDS Estate's representative was on notice of the discounting by virtue of the application form itself, had both the opportunity and the capacity to review the bylaws, and could ask questions like any other estate representative was able to do.
 
 [3]
 

 See
 

 Dallaire
 
 ,
 
 367 N.C. at 369
 
 ,
 
 760 S.E.2d at 267
 
 ("A party cannot establish justified reliance on an alleged misrepresentation if the party fails to make reasonable inquiry regarding the alleged statement." (citation omitted)). Further, there is no evidence in the record which would support a finding that SREMC affirmatively concealed facts regarding the discounting program, even if it did not advertise the amendments made in 2001. Accordingly, plaintiff EDS Estate cannot overcome the statute of limitations defenses through equitable estoppel and its argument on this point is overruled.
 

 (2) Plaintiff SDS Estate's Claims
 

 By application dated 28 May 2009, Sulie's son applied for decedent Sulie's capital credits. Following the Board's approval, SREMC tendered the sum of $126.76 to the Sampson County Clerk of Court pursuant to N.C. Gen. Stat. § 28A-25-6.
 

 Plaintiff SDS Estate contends the Clerk of Court's acceptance of SREMC's payment on behalf of the SDS Estate is limited to the amount paid the Clerk and does not extend to the amounts SREMC retained as "net savings." Plaintiff asserts this payment does not constitute a "release of indebtedness" which would bar plaintiff's claims for declaratory judgment, conversion, unjust enrichment, breach of contract, and UDTP. We disagree.
 

 "The receipt from the clerk of the superior court of a payment purporting to be made pursuant to this section [of Chapter 28A, Administration of Decedents' Estates] is a full release to the debtor for the payment so made." N.C. Gen. Stat. § 28A-25-6(e) (2015). Here, the trial court held that this language operated to release SREMC from further liability to plaintiffs regarding the SDS Estate, "not only to the amount paid, but also to the amount withheld by SREMC as a result of discounting." While plaintiff argues the release should not apply as SREMC did not advise the Clerk of the discount, the SDS Estate received and accepted without protest precisely what it was due pursuant to the Cooperative's Bylaws. As we find that SREMC's payment to the Clerk constituted a release of indebtedness pursuant to N.C. Gen. Stat. § 28A-25-6(e), we need not address the remaining claims made on behalf of the SDS Estate.
 

 In conclusion, as the facts of this case do not compel a finding that SREMC owed plaintiffs a fiduciary duty with regard to the discounting of capital credits and plaintiffs' claims are otherwise barred by the statute of limitations or were released pursuant to N.C. Gen. Stat. § 28A-25-6(e), the trial court did not err in granting SREMC's second and third motions for summary judgment. Accordingly, the orders of the trial court are
 

 AFFIRMED.
 

 Judges STROUD and DIETZ concur.
 

 [1]
 

 Claims for
 
 ultra vires
 
 and
 
 intra vires
 
 corporate acts have been voluntarily dismissed.
 

 [2]
 

 Other courts have recognized that patron credits cannot be considered an "indebtedness" which is presently due and payable.
 
 In re E. Me. Elec. Coop., Inc.
 
 ,
 
 125 B.R. 329
 
 , 336 (Bankr. D. Me. 1991) (noting that "the directors of a cooperative are free to refuse to pay value to retire a patron's account" and that "patronage dividends allocated cooperative patrons' accounts do not constitute an indebtedness" (citations omitted));
 
 Evanenko v. Farmers Union Elevator
 
 ,
 
 191 N.W.2d 258
 
 , 261 (N.D. 1971) (noting that other courts have held that "patronage credits are not such an indebtedness on the part of the cooperative due the patron which can be collected at any time" and concluding that "patronage credits constitute an interest of the patron in the cooperative which is contingent and not immediately payable").
 

 [3]
 

 Upon request of the representative for the Orpah Blanche Scott and Lee Ivey Williams Estates, SREMC provided the following formula used for retiring capital credits: Accumulated Capital Credits - Discount Factor = Net Capital Credit Amount - Outstanding Bad Debt = Capital Credit check amount OR Bad Debt Balance Remaining.