IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-108

Filed: 3 December 2019

Randolph County, No. 15 CVS 527

IRONMAN MEDICAL PROPERTIES, LLC and HODGES FAMILY PRACTICE, INC., Plaintiffs,

v.

TANVIR CHODRI, M.D. a/k/a Tanvir Chaudhary, PREMIER MEDICAL CENTER CONDOMINIUM ASSOCIATION, INC., RANDOLPH PULMONARY & SLEEP CLINIC, PLLC and WHITE OAK MEDICAL PROPERTIES, LLC, Defendants.

v.

BETH HODGES, M.D. and FRANCISCO HODGES, M.D., Third-Party Defendants.

Appeal by plaintiffs and third-party defendants from judgment entered 20 December 2016 and cross-appeal by defendants from order entered 2 December 2016, both entered by Judge Eric C. Morgan in Randolph County Superior Court. Heard in the Court of Appeals 6 September 2018.

> *Nelson Mullins Riley & Scarborough LLP, by Lorin J. Lapidus and G. Gray Wilson; Allman Spry Davis Leggett & Crumpler, P.A., by D. Marsh Prause and Jodi D. Hildebran and; and Yates, McLamb & Weyher, LLP, by Rodney E. Pettey and Brian M. Williams, for plaintiffs and third-party defendants.*

> *Rossabi Reardon Klein Spivey PLLC, by Gavin J. Reardon and Amiel J. Rossabi, for defendant Premier Medical Center Condominium Association, Inc.*

TYSON, Judge.

I. Procedural Background

Ironman Medical Properties, LLC ("Ironman") and Hodges Family Practices, Inc. ("HFP") (collectively, "Plaintiffs"), as well as Drs. Beth and Francisco Hodges (the "Hodges") as third-party defendants, appeal from a 2 December 2016 order granting a motion for a directed verdict made by Dr. Tanvir Chodri ("Dr. Chodri"), Premier Medical Center Condominium Association, Inc. ("Premier") and White Oak Medical Properties, LLC ("White Oak") (collectively, "Defendants"). These parties also appeal the 20 December 2016 judgment entered following a jury's verdict. Premier cross-appeals from a separate order denying its motion for attorney's fees and its motion to tax costs to Plaintiffs entered on 2 December 2016.

We find no error in the jury's verdict and the judgment entered thereon. We affirm the trial court's entry of directed verdict dismissing all claims asserted by the tenant, HFP, the Hodges and dismissing Ironman's punitive damage claims. We reverse and remand for trial on Ironman's claim for breach of fiduciary duty against Premier and Dr. Chodri and for the trial court to address Defendant Premier's motion for costs and attorney's fees.

## II. <u>Factual Background</u>

Ironman and HFP are separate and distinct legal entities chartered as a North Carolina Limited Liability Company and corporation, respectively. The Hodges, as individuals, hold ownership interests in both these entities.

White Oak developed Premier Medical Center as a ten-unit condominium complex located ("Condominium") in Asheboro, North Carolina. Ironman is the record owner of one condominium unit in the Premier Medical Center. In June 2010, Ironman leased its unit to HFP.

White Oak is a North Carolina Limited Liability Company, which owns and maintains the other nine units located in Premier Medical Center. Premier is a chartered North Carolina not-for-profit condominium association corporation. Dr. Chodri serves as the sole officer of Premier and is a co-owner of White Oak. Neither White Oak, Premier, nor Dr. Chodri is a party to Ironman's lease to HFP nor have any other connection to the Hodges on these issues, except through Ironman.

The voting interests in Premier were divided twenty-six percent (26%) to Ironman and seventy-four percent (74%) to White Oak. The common areas were allocated as twenty-one percent (21%) to Ironman and seventy-nine percent (79%) to White Oak.

White Oak was developed and initially owned by Dr. Chodri, his wife and a development partner. They managed Premier for approximately one year before their partner declared bankruptcy. Dr. Chodri had no prior experience managing investment properties or condominium associations.

Dr. Chodri practiced medicine and relied upon his medical practice office manager, Julie Trollinger ("Trollinger") to handle the financial affairs of White Oak and the Premier condominium complex. The parties agree that the office manager was "inexperienced, unsophisticated, and not particularly knowledgeable about such matters" involving managing condominium property.

Ironman quit paying its condominium dues in June 2012, despite repeated demands from Premier. On 4 December 2012, Ironman's unit's tenant, HFP, requested a breakdown of expenses for 2011 and 2012. The parties dispute whether Premier failed to timely provide the summaries of a budget and whether the budget summaries it provided were correct.

Plaintiffs alleged, despite HFP's multiple verbal and written requests, they were not furnished with income, expense, balance, or bank statements for the Condominium until after the lawsuit was filed in 2015.

Ironman also sent to Premier a written request for statements after Premier had responded to HFP's prior request by sending Ironman allegedly all financial documentation Premier had at the time. Plaintiffs were unsatisfied with these responses from Premier, claiming they were limited and entirely devoid of the requested financial information they were entitled to receive.

Plaintiffs' inquiry into Premier's finances revealed that the Condominium's assets had not been managed in accordance with the Declaration's bylaws. Under the bylaws, Premier had the authority and power to, *inter alia*, levy and to collect assessments. Assessments for the benefit of all the unit owners should have been levied in the same ratio as the percentage ownership interests.

The Declaration also provided that Premier was to treat all monies collected on its behalf as the separate property of Premier. All unit owner's assessments were to be paid monthly. The failure to enforce any right, provision, or covenant within the Declaration did not constitute a waiver of the right to seek enforcement in the future, within the applicable statute of limitations.

Premier's assets were allegedly commingled with those of White Oak and all Premier unit owners were allegedly charged an invalidly-calculated assessment fee.

Improper assessments and account management allegedly allowed White Oak to underpay condominium dues to Premier by over $200,000.00 since 2010.

No annual meetings of Premier's shareholders to elect officers and directors to the Association were conducted, as is required by the bylaws. Premier sought no federal or state tax ID number until 2015, maintained no separate corporate records, and never conducted audits of its finances.

Prior to the filing of this lawsuit, Premier, as an entity, had never generated profit and loss statements or balance sheets and had never sent required notices of annual reserve balances to its unit owners. Starting in 2010 when Ironman bought its unit, dues it paid were deposited into White Oak's bank account, rather than into a separate Premier account. White Oak never paid its required unit dues to Premier.

Rather, Trollinger would collect rent from tenants of White Oak's units and deposit them into a White Oak account. She also paid Premier's operating expenses from that account. After Ironman quit paying its required dues in 2012, Dr. Chodri would move funds from his other accounts to cover Premier's expenses, if the White Oak account was close to being overdrawn.

Premier's assessments to the unit owners were invalidly calculated based upon the occupied square footage, rather than the total project square footage, as is

required by the Declaration. Consequently, no separate or earmarked payments were made by White Oak to Premier for its vacant units. The improper account management allegedly caused approximately $207,345.00 in underpayment by White Oak to Premier.

HFP, as Ironman's tenant, had initially overpaid Ironman's assessments. Premier's accountant testified at the time of trial, after accounting for the withheld funds, HFP had underpaid Ironman, and consequently Ironman's unpaid obligations to Premier were $37,582.00.

Dr. Chodri also paid Premier's taxes out of the White Oak account and used funds in that account to pay down White Oak's mortgages and other non-condominium expenses. Dr. Chodri admitted receiving a benefit from improper uses of these funds.

Before HFP leased Ironman's unit, Ironman had been provided with a detailed report of Premier's expenses for 2009. The document contained White Oak's letterhead, rather than Premier's. It also showed the inclusion of property taxes, which were not an association expense.

After reviewing this expense report, Dr. Beth Hodges responded: "Is he serious? $9000 for lawn and snow removal? What lawn? And let's not even discuss

the janitorial fees. Either he is getting seriously ripped off or he is padding the bills." Nevertheless, despite these observations, HFP went forward with the lease with Ironman.

Dr. Chodri never told Plaintiffs of the improper account structures or assessment calculations. Once Defendants began attempting to sort through their accounting, Trollinger testified that she had not told the Hodges or HFP that a new bank account was being opened in Premier's name, because it was "none of their business." Further, Dr. Chodri testified that Premier had never informed Ironman or White Oak that no reserve funds were being maintained, because he thought sufficient funds were present to maintain the project. If Premier had kept reserve funds, and Ironman and White Oak had paid its required assessments and reserves, Ironman would be entitled to twenty-one percent of the reserve funds, and White Oak would be due seventy-nine percent.

Dr. Chodri testified he was unaware that White Oak was not paying its dues, that Premier's funds were being deposited into White Oak's accounts, and he had not realized the separate Premier bank account had not been set up. Dr. Chodri stated he had failed to contribute his monthly objective of $500.00 towards the reserve fund,

as Premier was struggling to meet other expenses. Premier's lender was told $500.00 per month was being set aside from the reserve fund.

On 18 March 2015, Ironman filed suit against Dr. Chodri, Premier, and White Oak. The original complaint alleged claims for breach of the condominium association declaration and bylaws, breach of fiduciary duty, and constructive fraud, and sought punitive damages. Defendants filed an answer with counterclaims on 30 July 2015. Ironman's reply to Defendants' counterclaims was filed on 1 October 2015. Defendants subsequently filed an amended answer. Ironman amended its complaint, with leave of court, to add HFP as a third-party plaintiff on 9 November 2015.

Plaintiffs' complaint alleged, *inter alia,* a breach of fiduciary duty that rose to the level of constructive fraud and breach of the Declaration of Condominium ("Declaration") and sought punitive damages. Defendants counter-claimed for breach of the Declaration and sought recovery of unpaid association dues Ironman had been withholding from the association since June of 2012.

The jury trial began on 9 August 2016. At the close of Plaintiffs' evidence, the court granted Defendants' motion for a directed verdict on all claims except Ironman's breach of contract claim on the Declaration. At the close of all evidence, Plaintiffs submitted a written request for special jury instructions on their affirmative defense,

which was denied by the trial court. Plaintiffs failed to object to the instructions at the time the jury was charged and have waived any challenge. *See* N.C. R. App. P. 10(a)(2).

The jury returned a verdict, which found both parties in breach of the Declaration, and awarded $1.00 in favor of Plaintiffs on their breach of contract claim and $51,472.00 in favor of Defendants on their breach of contract claim based on Ironman's unilateral suspension of payment of its dues in 2012. Plaintiffs and the Hodges timely appealed. Premier cross-appealed the trial court's denial of its motion for attorneys' fees and costs.

### III. Jurisdiction

An appeal of right lies to this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2017).

### IV. Analysis

### A. Standing

Defendants initially challenge the Plaintiffs' standing to bring their claims for breach of fiduciary duty and constructive fraud. Defendants argue shareholders have no right to bring a direct claim to enforce causes of action accruing to the corporation. *See Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 395, 537 S.E.2d

248, 253 (2000). "An action alleging a wrong done by [a condominium] association must be brought against the association and not against the unit owner." N.C. Gen. Stat. § 47C-3-111(b) (2017).

> The general prohibition against individual shareholder suits is understandable, for the duties, the breaches of which constitute the ground of action, are duties to the corporation, considered as a legal entity, and not duties to any particular shareholder. Thus, any damages recovered from derivative suits flow back to the corporation, not to the individual shareholders bringing the action. Furthermore, the procedural requirements for derivative suits protect shareholders and the corporation itself by avoiding a multiplicity of lawsuits, by *limiting who should properly speak for the corporation, and by preventing self-selected advocates pursuing individual gain rather than the interests of the corporation or the shareholders as a group, from bringing costly and potentially meritless strike suits. Given these principles, a shareholder generally has no standing to bring individual actions against a corporation. Standing, which is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction, generally refers to a party's right to have the merits of its dispute decided by a judicial tribunal.*
>
> Nevertheless, a shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong.

*Raymond James Capital Partners, L.P. v. Hayes*, 248 N.C. App. 574, 578, 789 S.E.2d 695, 700 (2016) (internal citations, alterations and quotation marks omitted) (emphasis supplied).

- 11 -

Ironman asserts standing to sue the association as a shareholder because:

> There are two major, often overlapping, exceptions to the general rule that a shareholder cannot sue for injuries to his corporation: (1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, and (2) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders.

*Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997) (citations omitted).

"The North Carolina Supreme Court has recognized as illustrative of a special duty, 'when a party violate[s] its fiduciary duty to the shareholder.'" *Corwin v. British Am. Tobacco PLC*, 251 N.C. App. 45, 66, 796 S.E.2d 324, 338 (2016), *rev'd on other grounds sub nom. Corwin as Tr. for Beatrice Corwin Living Irrevocable Tr. v. British Am. Tobacco PLC*, __ N.C. __, 821 S.E.2d 729 (2018) (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 220).

The officers and board members of a condominium association owe a statutorily-imposed fiduciary duty to both the association and the unit holders. N.C. Gen. Stat. § 47C-3-103(a) (2017). "Subsection (a) makes members of the executive board appointed by the declarant liable as fiduciaries of the unit owners with respect to their actions or omissions as members of the board." *Id.*, Cmt. 1. "A 'fiduciary relation' is one that 'may exist under a variety of circumstances; it exists in all cases

where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'" *Lockerman v. S. River Elec. Membership Corp.*, 250 N.C. App. 631, 635, 794 S.E.2d 346, 351 (2016) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). "In North Carolina, a fiduciary duty can arise by operation of law (*de jure*) or based on the facts and circumstances (*de facto*)." *Id.*

"A plaintiff must present evidence that they suffered an injury peculiar or personal to themselves. An injury is peculiar or personal to the shareholder if a legal basis exists to support plaintiff's allegations of an individual loss, separate and distinct from any damage suffered by the corporation." *Corwin*, 251 N.C. App. at 66, 796 S.E.2d at 339 (citation and internal quotation marks omitted).

Our appellate courts have "equated the status of corporate shareholders and corporate directors to that existing between limited partners and general partners" when standing of a party has been challenged in this way. *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 334, 525 S.E.2d 441, 443 (2000).

"Even when one person contributes a disproportionate amount of the investment and thus bears a correspondingly greater loss, such an occurrence hardly makes for an individual injury." *Green v. Freeman*, 367 N.C. 136, 144, 749 S.E.2d 262,

269 (2013) (emphasis added) (citation and internal quotation marks omitted). "[T]he question is not whether the plaintiff is in a less favorable position than the general partner, but whether the plaintiff is in a less favorable position when compared to all other limited partners." *Jackson v. Marshall*, 140 N.C. App. 504, 509, 537 S.E.2d 232, 235 (2000) (referencing *Energy Investors Fund*, 351 N.C. at 336, 525 S.E.2d at 444).

This Court in *Norman* looked to the discussion and analysis in both *Barger* and *Energy Investors* to explain when a special duty arises or a distinct injury exists. "*Norman*'s extensive discussion of the closely held nature of the company and the powerlessness of the minority shareholders offers tools for a careful examination of the particular facts of a case to determine if a special duty or distinct injury exists within the meaning of *Barger* and *Energy Investors*." *Gaskin v. J.S. Procter Co., LLC*, 196 N.C. App. 447, 453, 675 S.E.2d 115, 119 (2009) (referencing *Norman*, 140 N.C. at 405, 537 S.E.2d at 259).

In *Gaskin* and *Norman*, this Court considered the following factors to determine whether to permit a direct action against a closely held corporation: (1) the number of shareholders; (2) whether the plaintiff was a minority shareholder; (3) the degree of control the plaintiff maintains in the partnership; (4) whether individual defendants used majority stock ownership and control to divert corporate funds to

themselves; and, (5) the impact of a direct lawsuit on third-party creditors. *Id.* at 454, 675 S.E.2d at 119; *Norman*, 140 N.C. at 404, 537 S.E.2d at 258.

As Premier's sole officer and executive board member, Dr. Chodri's position carries and imposes a statutory fiduciary duty that is owed to all unit owners, including Ironman and White Oak. *See* N.C. Gen. Stat. § 47C-3-103. Comment 1 to Section 47C-3-103 provides: "This provision imposes a very high standard of duty because the board is vested with great power over the property interests of unit owners, and because there is a great potential for conflicts of interest between the unit owners and the declarant." Ironman and White Oak have standing under the statute to assert claims for breach of fiduciary duty. *Id.* Whether Ironman or White Oak suffered individual or recoverable damages is a separate issue.

## B. Directed Verdict

Plaintiffs argue that the trial court erred by granting a directed verdict that dismissed Plaintiffs' claims for breach of fiduciary duty and constructive fraud, and punitive damages. Defendant argues the trial court's directed verdict was proper because Plaintiffs failed to provide sufficient evidence to justify the claim that Dr. Chodri's alleged breach of his statutorily-imposed fiduciary duty rose to the level of constructive fraud, to survive a defense of expiration of the three year statute of

limitations and to warrant application of the corresponding ten-year statute of limitations.

### 1. Standard of Review

The trial court's order and judgment appealed from is presumed to be correct, and the burden of showing error rests with the appellant. *London v. London*, 271 N.C. 568, 570-71, 157 S.E.2d 90, 92 (1967).  "The standard of review of [a] directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991) (citing *Kelly v. Int'l Harvester Co.*, 278 N.C. 153, 179 S.E.2d 396 (1971)).

"To survive a motion for directed verdict . . ., the non-movant must present more than a scintilla of evidence to support its claim." *Morris v. Scenera Research, LLC*, 368 N.C. 857, 861, 788 S.E.2d 154, 157 (2016) (citations and internal quotation marks omitted).  "Because the trial court's ruling on a motion for a directed verdict addressing the sufficiency of the evidence presents a question of law, it is reviewed *de novo*." *Maxwell v. Michael P. Doyle, Inc.*, 164 N.C. App. 319, 323, 595 S.E.2d 759, 761 (2004).

Neither HFP, as tenant, nor the Hodges, as individuals, possess standing to bring either claims because neither of them are unit owners or were owed any statutorily-created or other fiduciary duty by Premier or its officer(s), nor had privity of contract with Premier. As such, neither party can show "an injury separate and distinct from that suffered by other shareholders." *Barger*, 346 N.C. at 658, 488 S.E.2d at 219. The trial court correctly granted a directed verdict on all of HFP's and the Hodges' claims for breach of fiduciary duty and constructive fraud, as neither are shareholders of Premier.

### 2. Breach of Fiduciary Duty

Ironman's claim for breach of fiduciary duty alleges that Dr. Chodri, in his representative capacity as Premier's executive board president, owed a statutorily-imposed fiduciary duty to Ironman, as a unit owner. Ironman contends that Dr. Chodri breached this statutorily-imposed fiduciary duty when he, *inter alia*, failed to maintain a separate bank account, billed Ironman for unrelated common element charges, and refused to provide full access to the books and records. Further, Ironman argues that as a result of Dr. Chodri's breach, Ironman suffered and will continue to suffer monetary damages due to Dr. Chodri's use of their payments to pay his taxes, make payments on White Oak's mortgage, and directly pay himself

approximately $138,000.00. Viewed in the light most favorable to it, Ironman has provided sufficient evidence to be submitted to the jury, unless otherwise barred.

Ordinarily, breaches of fiduciary duty are governed by the three-year statute of limitations contained in N.C. Gen. Stat. § 1-52(1). *Marzec v. Nye*, 203 N.C. App. 88, 93, 690 S.E.2d 537, 541 (2010). However, "[a] ten-year statute of limitations applies to breach of fiduciary duty claims *only* when they rise to the level of constructive fraud." *Orr v. Calvert*, 212 N.C. App. 254, 260, 713 S.E.2d 39, 44 (emphasis supplied), *overruled on other grounds*, 365 N.C. 320, 720 S.E.2d 387 (2011). Because Ironman filed suit more than three years after Dr. Chodri's alleged wrongdoing, it's claim for breach of statutory fiduciary duty is barred, unless the breach rose to the level of constructive fraud.

### 3. Constructive Fraud

A constructive fraud claim requires a plaintiff to allege and show (1) that the defendant "owes the plaintiff a fiduciary duty;" (2) that the defendant "breached" that duty; and, (3) that the defendant "sought to benefit himself in the transaction." *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 620, 730 S.E.2d 763, 767 (2012) (citation omitted). "A claim of constructive fraud does not require the same rigorous adherence to elements as actual fraud[,]" and accordingly

does not need to meet the Rule 9(b) pleading requirement. *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 482, 593 S.E.2d 595, 599 (2004) (citation omitted).

The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the intent and showing that the defendant benefitted from his breach of duty. *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004). This element requires a plaintiff to allege and prove that the defendant took "advantage of his position of trust to the hurt of plaintiff" and sought "his own advantage in the transaction." *Barger*, 346 N.C. at 666, 488 S.E.2d at 224 (citation omitted).

Since sufficient evidence of a statutory fiduciary relationship exists, the remaining issues to support a constructive fraud claim are whether Ironman introduced sufficient evidence showing: (1) Dr. Chodri benefitted as a result of the mismanaged funds; and, (2) if Dr. Chodri benefitted, that he intentionally took advantage of the fiduciary relationship to benefit himself.

A plaintiff must allege that the benefit sought was "more than a continued relationship with the plaintiff" or "payment of a fee to a defendant for work" it actually performed. *Sterner v. Penn*, 159 N.C. App. 626, 631-32, 583 S.E.2d 670, 674

(2003) (citation omitted). The evidence presented included Dr. Chodri allegedly misappropriating association dues in addition to assessments.

Ironman contends Dr. Chodri benefitted from his financial misconduct by making payments for taxes, mortgage, and to pay himself from the White Oak account which contained Premier's funds. Presuming, without deciding, this is sufficient evidence to show that Dr. Chodri benefitted from the alleged mismanagement, the issue remains of whether Ironman introduced sufficient evidence that Dr. Chodri mismanaged the funds with the intent to benefit himself.

Entering summary judgment or a directed verdict on claims for breach of a fiduciary duty and constructive fraud, "is rarely proper when a state of mind such as intent or knowledge is at issue." *Valdese Gen. Hosp., Inc. v. Burns*, 79 N.C. App. 163, 165, 339 S.E.2d 23, 25 (1986). Here, it is unclear whether Dr. Chodri intended to benefit from the improper account management or was merely negligent or omitted his duties. However, presuming that Dr. Chodri personally benefitted, the burden shifts to Dr. Chodri to prove that he dealt in an "open, fair and honest manner." *Compton v. Kirby*, 157 N.C. App. 1, 16, 577 S.E.2d 905, 915 (2003). *See also Forbis v. Neal*, 361 N.C. 519, 529, 649 S.E.2d 382, 388 (2007) (holding "[w]hen . . . the superior party obtains a possible benefit through the alleged abuse of the confidential or

fiduciary relationship, the aggrieved party is entitled to a presumption that constructive fraud occurred"). As such, we are unable to conclude as a matter of law that the trial court's entry of a directed verdict on Ironman's claims on these issues was proper.

### 4. Punitive Damages

To recover punitive damages a claimant must prove, by "clear and convincing evidence," that "the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) fraud, (2) malice, or (3) willful or wanton conduct." N.C. Gen. Stat. § 1D-15(a)-(b) (2017). As used in Chapter 1D, "fraud" means actual fraud. *See* N.C. Gen. Stat. § 1D-5(4) (2017) ("'Fraud' does not include constructive fraud unless an element of intent is present."). Because Plaintiffs presented no evidence of actual fraud, the trial court's entry of a directed verdict on all Plaintiffs' claims for punitive damages is affirmed.

### C. Attorney Fees

Defendants assert the trial court erred by denying their motion for attorneys' fees. Defendants argue an award of costs and attorneys' fees under N.C. Gen. Stat. § 47C-3-116(e) and N.C. Gen. Stat. § 47C-3-116(g) are mandatory.

1. *Standard of Review*

N.C. Gen. Stat. § 47C-3-116 provides for mandatory attorney fees. This Court "review[s] a trial court's decision whether to award mandatory attorney's fees *de novo.*" *Willow Bend Homeowners Ass'n v. Robinson*, 192 N.C. App. 405, 418, 665 S.E.2d 570, 578 (2008).

2. *Analysis*

As permitted by the Condominium Act and its Declaration, Premier assesses all owners condominium fees for the payment of common area expenses. Enforcement of collecting those fees is subject to N.C. Gen. Stat. § 47C-3-116. Section 116, entitled "Lien for sums due the association; enforcement," provides procedures and remedies that an association may take to collect sums due it from a unit owner. N.C. Gen. Stat. § 47C-3-116 (2017). Additionally, Section 116 includes three separate attorneys' fees provisions. *See* N.C. Gen. Stat. § 47C-3-116(e), (f)(12), (g). Here, Defendants argue that an award of attorneys' fees to Premier is mandatory under subsections (e) and (g).

Subsection 116(g) provides that any judgment in any "civil action relating to the collection of assessments shall" include an award of costs and reasonable attorneys' fees "for the prevailing party." N.C. Gen. Stat. § 47C-3-116(g). This

statute's use of the word "shall" provides no element of discretion of whether reasonable fees will be awarded. *See Willow Bend*, 192 N.C. App. at 418, 665 S.E.2d at 578 (holding that attorney fees under the analogous N.C. Gen. Stat. § 47F-3-116(e) were mandatory where the statute provided that "[a] judgment, decree, or order in any action brought under this section *shall* include costs and reasonable attorneys' fees for the prevailing party").

Upon remand, the trial court must determine if Premier was: (1) the prevailing party; and, (2) in a civil action relating to the collection of condominium assessments. If so, the trial court must award Premier its "reasonable" attorney fees. The trial court's denial of Premier's motion for costs and attorney fees is reversed and remanded.

## V. Conclusion

For the reasons stated above, we find no error in the judgment entered upon the jury's verdicts concerning the parties' respective breach of the Declaration. We affirm the trial court's entry of directed verdict for Defendants and against HFP and the Hodges individually on all their claims. We also affirm the trial court's entry of directed verdict against all Plaintiffs on their claims for punitive damages.

We reverse and remand that portion of the trial court's order which entered a directed verdict against Plaintiff Ironman on its claim for breach of fiduciary duty and constructive fraud against Defendants Premier and Dr. Chodri as its sole officer. We also reverse and remand the order denying Premier's claims for costs and attorney fees against Ironman for breach of the Declaration and remand for a hearing in accordance with the statutes. *It is so ordered.*

NO ERROR IN PART, AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judges INMAN and BERGER concur.