Lau v. Constable, 2019 NCBC 69.

STATE OF NORTH CAROLINA

COUNTY OF FORSYTH

GREGORY LAU and VENT TECH CORPORATION,

        Plaintiffs,

    v.

DOUGLAS CONSTABLE, ROBERT MARTIN, TIFFANY WILLARD, and JENNIFER CONSTABLE,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 4393

**ORDER & OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

THIS MATTER is before the Court upon Plaintiffs Gregory Lau and Vent Tech Corporation's Motion for Summary Judgment, ("Plaintiffs' Motion", ECF No. 155), and Defendant Robert Martin's Motion for Summary Judgment. ("Martin's Motion", ECF No. 157; collectively, the "Motions".) The Court, having considered the Motions, the briefs in support of and in opposition to the Motions, the evidentiary materials filed by the parties, the arguments of counsel at the hearing on the Motion, and other appropriate matters of record, concludes that the Motions should be GRANTED, in part, and DENIED, in part, for the reasons set forth below.

> *Terpening Law PLLC by William R. Terpening for Plaintiffs Gregory Lau and Vent Tech Corporation.*

> *Blanco Tackabery & Matamoros, P.A. by Chad A. Archer, Elliot A. Fus, and Peter J. Juran for Defendant Robert Martin*

McGuire, Judge.

I.    FACTS

1.    "The Court does not make findings of fact when ruling upon a motion for summary judgment.  But[,] to provide context for its ruling, the Court may state either those facts that it believes are not in material dispute or those facts on which a material dispute forecloses summary adjudication." *Ehmann v. Medflow, Inc.*, 2017 NCBC LEXIS 88, at *6 (N.C. Super. Ct. Sept. 26, 2017).

2.    Plaintiff Gregory Lau ("Lau") is the founder and current sole owner of Plaintiff Vent Tech Corporation ("VTC").[1]  (Lau Depo. Excerpts Supp. of Pls., ECF No. 159.2, at pp. 8, 13, 15–17; Robert Martin Aff., ECF No. 161 at pdf. pp. 1–25, ¶ 2 (hereinafter "Martin Aff.").)[2]  Lau formed VTC as a New Jersey company in the late 1980s and moved it to Mocksville, North Carolina by the early 1990s.  (ECF No. 159.2, at pp. 12–13; Martin Aff., at ¶ 2.)  VTC was in the business of developing, manufacturing, and selling medical devices with a focus on resuscitation products. (Martin Aff., at ¶ 13.)  In addition to its U.S. operations in Mocksville, VTC had significant operations in China where it manufactured its products.  (*Id.* at ¶¶ 9, 19.) Lau served as VTC's chief executive officer and the chairman of its Board of Directors. (*Id.* at ¶ 19.)  However, during the relevant time period, he spent most of his time in China managing the overseas manufacturing aspects of VTC's operations.  (*Id.* at ¶¶ 9–10, 19; Martin Depo. Supp. of Pls., ECF No. 159.5, at p. 20.)

---

[1] VTC was formerly known as Ventlab Corporation but is referred to herein solely as VTC.
[2] ECF No. 161 is a single pdf. document that contains all of Defendant's exhibits with no continuous page numbers. ECF No. 161, consequently, necessitates the implementation of an unorthodox citation form that notes the page rage within the pdf. where the cited material can be located.

3. Defendant Robert Martin ("Martin") is a former employee, shareholder, and officer of VTC. Martin joined the company as Director of Sales and Marketing in 1993, was promoted to the position of Vice President of Sales and Marketing in 2000, and ultimately was named President of VTC sometime in 2004 or 2005. (Martin Aff., at ¶¶ 1–12.) As President, Martin's primary focus was managing sales, marketing, and product development for VTC. (*Id.* at ¶ 11; ECF No. 159.12, at p. 28.) From 1999 until at least 2009, Martin was a minority shareholder of VTC holding a membership interest of up to 11 to 11.5% of the company. (ECF No. 159.12, at ¶ 26.) In 2009, Martin notified Lau of his intent to exercise his buyout rights and Martin was paid out for his ownership interest over a period of time. (*Id.* at ¶¶ 26–30.)

4. Defendant Doug Constable ("Constable") is a former employee, shareholder, and officer of VTC. On Martin's recommendation, Lau hired Constable around 2000 or 2001. (Martin Depo. Supp. of Pls., ECF No. 159.5, at p. 20; ECF No. 159.2, at p. 54.) During his time at VTC, Constable served as the Executive Vice President and operated as VTC's Chief Financial Officer. (Martin Aff., at ¶¶ 16, 19.) Constable, *inter alia*, was in charge of all of VTC's financial. (*Id.*) Constable also became a minority shareholder in VTC in or around 2009 and held as much as a 5% ownership interest in the company. ("Fahey Report", ECF No. 159.4, at p. 4.)

5. VTC remained in operation until December 31, 2012, at which time its assets were sold to a third-party company (the "Sale") and its operations effectively ceased. (Martin Aff., at ¶ 35.) Lau, Martin, and Constable were employed by VTC until the Sale.

6. In May of 2013, following the Sale of VTC, a representative of the purchaser of VTC, Dan Bowen ("Bowen"), visited Lau in China. (ECF No. 159.2, at pp. 176–77.) According to Lau, during the visit Bowen suggested that VTC would have been more valuable if Lau had been more careful managing the finances of the company, including accumulating alleged American Express credit card expenses of $110,000 to $120,000 a month. (*Id.*) Lau states that this conversation with Bowen sparked his curiosity into whether Constable and Martin had acted improperly in managing the company's resources. (*Id.*)

7. In October 2013, Lau engaged Alex Fahey, a certified public accountant and certified fraud examiner, to investigate potential corporate wrongdoing carried out by Constable, Martin, and others employed by VTC. (ECF No. 161, at pdf. pp 405-24, pp. 14–15 (hereinafter "Fahey Depo."); "Fahey Aff. in Opp. to Martin", ECF No. 167.3.) Fahey performed an initial fraud analysis, discovered alleged fraud, and recommended that Lau hire an attorney. (Fahey Depo., at p. 15.)

8. At some point following Lau's discovery of the potential fraud, Lau, Constable, and Martin began to engage in discussions about claims Lau believed he had against Martin and Constable and vice versa. ("2015 Tolling Agreement", *see generally*, ECF No. 167.11.) On December 28, 2015, Lau, Constable, and Martin entered into a Tolling Agreement "in their individual capacities and to the extent they were owners, officers, or managers of [VTC] or Ventlab Holdings with the authority to bind said entities[.]" (*Id.* at p. 1) Lau, Constable, and Martin entered the 2015 Tolling Agreement to toll the applicable statutes of limitation until June 30, 2016 for

Lau's potential claims "relating to or arising out of the ownership, management, operations, and sale of [VTC or Ventlab Holdings], or the use, misuse, or disposition of [VTC or Ventlab Holdings] funds or resources[.]" (*Id.*) The parties subsequently entered into another Tolling Agreement extending the tolling period until July 21, 2016. ("2016 Tolling Agreement", ECF No. 167.12; collectively with the 2015 Tolling Agreement, the "Tolling Agreements".)

9. On July 21, 2016, Plaintiffs filed this lawsuit, and on January 25, 2018, Plaintiffs, with leave of Court, filed the Amended Complaint. (ECF Nos. 1, 110.)

10. The gravamen of the Amended Complaint is that Defendants, led by Constable, carried out a far-reaching scheme to misuse and steal millions of dollars from Plaintiffs. ("Amended Complaint", ECF No. 110, at ¶¶ 1–14.) Specifically, Plaintiffs assert that Constable falsified and manipulated VTC company records and diverted Plaintiffs' funds through unrelated entities ("Self-Dealing Entities") and accounts to himself and others, and that all named Defendants were aware of and personally benefitted from these diversions of Plaintiffs' financial resources. (*Id.*)

11. Plaintiffs and the Defendants other than Martin ("Settling Defendants") subsequently entered into a confidential settlement agreement. On September 18, 2018, Plaintiffs and the Settling Defendants filed a stipulation of dismissal dismissing Plaintiffs' claims against the Settling Defendants with prejudice. ("Stipulation of Dismissal", ECF No. 135.) Martin is the only remaining Defendant in this lawsuit.

12.     The current dispute between Plaintiffs and Martin centers on Plaintiffs' contention that Lau—while residing in China and focusing his efforts on managing VTC's manufacturing operations—entrusted Martin with the responsibility of overseeing and managing VTC's United States operations, and that Martin breached that trust to the damage of Lau and VTC. (Pls.' Supp. Br., ECF No. 156, at pp. 1–3.) More specifically, Plaintiffs argue the evidence shows that Martin encouraged Lau to focus his attention on VTC's manufacturing operations in China and promised to oversee and protect VTC's U.S. Operations. (ECF No. 159.2, at pp. 53, 78–79.) Lau claims he would not have worked and lived in China for so long if he knew that Martin "[was] not watching the shop for [him.]" (*Id.* at pp. 78–79.) Lau expected Martin's oversight to include, *inter alia*, review of VTC's financial operations, including direct oversight of Constable. (*Id.* at pp. 53, 78–79, 81–82.)

13.     Plaintiffs assert that the evidence shows Martin neglected his duties to Lau and VTC and injured Lau and VTC by (1) diverting Plaintiffs' funds to himself, and (2) knowingly allowing his co-Defendants, primarily Constable, to divert Plaintiffs' funds to themselves. (ECF No. 156, at p. 5.) Plaintiffs further contend that the evidence shows Martin diverted Plaintiffs' funds to himself by: (1) receiving illegal payments from VTC "sometimes directly, but often through the ownership of third party entitites[;]" (2) using VTC's credit card to pay for hundreds of thousands of dollars of personal expenses; and (3) receiving improper payments following the December 31, 2012 Sale of VTC. (*Id.* at p. 6.) Plaintiffs point to the Report of Alex Fahey, a certified fraud examiner and certified financial forensics expert employed

by Plaintiffs, as the primary evidence that establishes Constable and Martin's improper diversion of VTC's funds and assets. ("Fahey Report", ECF No. 159.4.)

14.    Martin, however, denies knowledge, or involvement in, any of the wrongful transactions asserted by Plaintiffs and argues that the evidence does not establish any wrongdoing on his part. (Martin Br. ISO. Mot. for SJ., ECF No. 158.) Martin presents evidence that he never "participate[d] in or ha[d] oversight of financial management, bookkeeping, wire transfers, or management of these functions for [VTC.]" (Martin Aff., at ¶ 18; James Cochie Aff., ECF No. 161 at pdf. pp. 309-11, ¶ 4; Chris Reed Aff., ECF No. 161, at pdf. pp. 312-15, ¶ 4.) Martin instead avers that Lau was responsible for VTC's overall wellbeing including oversight of company financials and personnel. (Martin Aff., at ¶ 19.) Furthermore, Martin presents evidence that he was President of VTC in title only and did not take on the traditional duties of a company President. (*Id.* at ¶ 12.) Martin's evidence is that his sole responsibility with VTC was driving its sales growth and managing its marketing and product development efforts. (*Id.* at ¶¶ 11, 14.) Martin also offers evidence that using company funds for personal expenses was an accepted practice embedded in VTC's corporate culture and the Lau was an active participant in doing the same. (*Id.*) Based on this evidence, and certain affirmative defenses raised in his Motion, Martin argues that Plaintiffs' Motion should be denied, and that Martin's own Motion should be granted. (*see generally,* ECF No. 158.)

## II. PROCEDURAL BACKGROUND

15. This action was commenced on July 21, 2016 and was designated as a complex business case and assigned to the Honorable Michael L. Robinson on July 22, 2016. (Designation Order, ECF No. 4; Assignment Order, ECF No. 5). On January 17, 2018, the case was reassigned to the undersigned. (ECF No. 108.) On January 23, 2018, Plaintiffs were granted leave to file an amended complaint, and on January 25, 2018, the Amended Complaint was filed with the Court. (ECF No. 110.)

16. In the Amended Complaint, VTC asserts the following claims against Martin: constructive fraud (sixth claim for relief); breach of fiduciary duty (seventh claim for relief); and conversion (eighth claim for relief). Additionally, VTC and Lau collectively assert claims against Martin for unjust enrichment (sixteenth claim for relief); constructive trust (seventeenth claim for relief); and civil conspiracy (eighteenth claim for relief). (ECF No. 110, at pp. 64–92.)

17. On April 1, 2019, Plaintiffs filed Plaintiffs' Motion seeking summary judgment in their favor on all of their claims against Martin. (ECF No. 155.) Plaintiffs also filed a brief in support of the Motion, (ECF No. 156), and multiple supporting materials (Pls.' Materials Supp. SJ., ECF Nos. 159–159.21.) On the same date, Martin filed Martin's Motion seeking summary judgment on all claims asserted against him by Plaintiffs. (ECF No. 157.) Martin also submitted a brief in support of the Motion (Martin's Br. Supp., ECF No. 158) and multiple supporting materials (Martin's Materials Supp. SJ., ECF No. 161.)

18. On May 1, 2019, Plaintiffs filed their brief in opposition to Martin's Motion, (Pls.' Br. Opp. Martin Mot. SJ., ECF No. 167), and multiple materials in opposition. (Pls.' Materials Opp. Martin Mot. SJ, ECF Nos. 167.1–167.13). On May 6, 2019, Martin filed his brief in opposition to Plaintiffs' Motion, (Martin's Br. Opp. Pls. Mot. SJ, ECF No. 169), and multiple materials in opposition. (ECF No. 170). On May 14, 2019, Martin filed his reply brief in support of his Motion. (Martin's Reply Br., ECF No. 174). On May 29, 2019, Plaintiffs filed their reply brief and materials in support of their Motion. (Pls.' Reply Br., ECF No. 175; Pls.' Reply Materials, ECF No. 175.1–175.4.) The Motions came before the Court for hearing on June 25, 2019.

19. The Motions are now ripe for review by the Court.

III.  ANALYSIS

### A. *Standard of Review*

20. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that any party is entitled to judgment as a matter of law.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (hereinafter the NC Rules of Civil Procedure are referred to as "Rules")). The moving party bears the burden of presenting evidence which shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563, 668 S.E.2d 349, 351 (2008). Where the moving party is the defendant, they

may meet this burden by "proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would have been barred by an affirmative defense." *Variety Wholesalers, Inc.*, 365 N.C. at 523, 723 S.E.2d at 747. An issue is "material" if "resolution of the issue is so essential that the party against whom it is resolved may not prevail." *McNair v. Boyette*, 282 N.C. 230, 235, 192 S.E.2d 457, 460 (1972). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).

21. Once the movant presents evidence in support of his motion, the nonmovant "cannot rely on the allegations or denials set forth in her pleading [ ] and must, instead, forecast evidence to show the existence of a genuine issue of material fact in order to preclude an award of summary judgment." *Steele v. Bowden*, 238 N.C. App. 566, 577, 768 S.E.2d 47, 57 (2014) (internal citations and quotations omitted). In conducting its analysis, the Court must view the evidence in the light most favorable to the nonmovant. *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835.

### B. Lau Fails to Establish That He Has Standing to Raise Individual Claims Against Martin

22. Preliminarily, Lau has not argued that he has standing to bring individual claims against Martin. "As a general rule, shareholders have no right to bring actions in their individual names to enforce causes of action accruing to the corporation, but must assert such claims derivatively on behalf of the corporation." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 395, 537 S.E.2d 248, 253 (2000) (internal citation and quotations omitted). There are two exceptions to this general rule. A shareholder may maintain individual actions for injuries to

the company (1) "if the [member] can show that the wrongdoer owed him a special duty[,]" or (2) if "the injury suffered by the [member] is separate and distinct from the injury suffered by the other [members] or the [company] itself." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658–59, 488 S.E.2d 215, 219 (1997).

23. Lau has not argued that he has standing to bring individual claims against Martin under either of the exceptions to the general rule prohibiting shareholders from suing in their individual capacity. Therefore, Martin's motion for summary judgment seeking dismissal of Lau's individual claims against Martin for unjust enrichment and civil conspiracy should be GRANTED, Plaintiffs' motion for summary judgment seeking judgment in Lau's favor as to his claims against Martin should be DENIED, and Lau's individual claims should be DISMISSED.

24. Since both of Lau's individual claims against Martin are dismissed, Martin's motion for summary judgment seeking dismissal of Lau's individual claim for constructive trust also should be GRANTED. *Azure Dolphin, LLC v. Barton*, 2017 NCBC LEXIS 90, at *29 (N.C. Super. Ct. Oct. 2, 2017) (dismissing plaintiffs' request for a constructive trust because a constructive trust is a remedy, not a cause of action, and plaintiffs' underlying causes of action had been dismissed).

### C. Martin's Affirmative Defenses

25. The Court begins its analysis of the Motions by first addressing the affirmative defenses raised by Martin. Martin argues that (1) each of Plaintiffs' claims are barred by the affirmative defenses of *in pari delicto* and/or contributory negligence; and (2) Plaintiffs' claims are barred in whole or in part by the applicable

statutes of limitation. (ECF No. 158, at pdf. pp 9-19/31.) The Court addresses each argument in turn.

   a. In Pari Delicto

26. The *in pari delicto* doctrine "prevents the courts from redistributing losses among wrongdoers." *Freedman v. Payne*, 253 N.C. App. 282, 286, 800 S.E.2d 686, 689 (2017) (quotations and citation omitted). "The defense operates to bar a plaintiff's claims when the plaintiff is at least equally at fault with the defendant and the allegedly wrongful conduct complained of is the subject of the lawsuit." *Zloop, Inc. v. Parker Poe Adams & Bernstein, LLP*, 2018 NCBC LEXIS 16, at *16–17 (N.C. Super. Ct. Feb. 16, 2018). However, "the *in pari delicto* doctrine generally is not applied to bar a claim by a corporation against its own wrongdoing agents." *Zloop, Inc.*, 2018 NCBC LEXIS 16, at *34.

27. Here, Martin argues that he has presented evidence that Lau committed bad acts nearly identical in nature to the acts of which Martin is accused and that the *in pari delicto* doctrine should be applied to bar Plaintiffs' claims. (ECF No. 158, at pdf. pp. 10–12/31.) More specifically, Martin argues he has presented evidence that Lau used company funds to pay for work done at a condominium Lau owned and that Lau was aware of and participated in using company funds to pay for personal expenses while in China. (*Id.*)

28. The evidence on these issues, however, is hotly disputed and does not allow the Court to grant summary judgment to Martin on the grounds of the *in pari delicto* doctrine. For example, in his deposition, Lau explained that he never directed

anyone to use company funds for work done on his personal condo and stated his belief that such work never occurred. (Lau Depo., ECF No. 161, at pdf. pp. 316-57, p. 124.) Furthermore, Lau stated that it was VTC's policy that it did not pay for personal expenses and that he tried to ensure he did not use company money for his personal expenses. (ECF No. 159.2, at p. 115.) Lau also explained that the phrase "personal spending" used in the accounting records for VTC's China operations actually referred to the company's petty cash expenses and that he did not use company funds to pay for personal expenses in China. (Lau Depo., ECF No. 161, at. pdf. pp. 316-57, p. 237.) The evidence creates genuine issues of material fact as to whether Lau committed any wrongdoing, let alone wrongdoing equal to that potentially committed by Martin. Therefore, Martin's affirmative defense based on the *in pari delicto* doctrine fails at this stage and his motion for summary judgment on that ground should be DENIED.

   b. Contributory Negligence

29. Martin further argues that to the extent Lau knew about Constable's misconduct and/or participated in similar misconduct, Lau's failure to take proper precautions to protect against Constable's misdeeds is imputable to VTC and stands as a complete bar to its negligence-based breach of fiduciary duty and constructive fraud claims. (ECF No. 158 at pdf. pp. 13/31.) Here again, whether or not Lau knew of Constable's misconduct or participated in any misconduct of his own is disputed. In his deposition, Lau states that while he was suspicious of the company's performance he did not become aware of any potential misdeeds by Constable or

Martin until 2013, following the sale of VTC. (ECF No. 159.2, at pp. 176–77, 182.) Furthermore, throughout his deposition testimony, Lau averred that he did not participate in spending the company's money on personal matters and did not benefit from diversions of the company's money. (*See generally*, ECF No. 159.2.) Based on the contested nature of the evidence on this issue, the Court cannot resolve the issue at the summary judgment stage. Martin's motion for summary judgment based on the affirmative defense of contributory negligence should be DENIED.

c. Statute of Limitations

30. Martin's next affirmative defense-based argument is that Plaintiffs' claims are barred in whole or in part by the applicable statutes of limitations. (ECF No. 158 at pdf. pp. 14–19/31.) Martin argues that each of Plaintiffs' claims are subject to a three-year statute of limitations and further contends that the 2015 and 2016 Tolling Agreements did not apply to VTC's claims. (*Id.*)

31. Plaintiffs argue that all of their claims were timely because the most recent acts on which their claims are based occurred on or after December 31, 2012, and the continuing wrong doctrine and the Tolling Agreements tolled Plaintiffs' claims which accrued on or after December 28, 2012. (ECF No. 167, at pp. 15–19.) Plaintiffs further argue that the statute of limitations for constructive fraud is ten years, not three years. (*Id.*)

32. The Court first addresses Martin's argument that the Tolling Agreements do not apply to claims by VTC. Based on a plain reading of the Tolling Agreements, Martin is incorrect. The Tolling Agreements were entered by Lau,

Martin, and Constable in their individual capacities and "*to the extent they are owners, officers, or managers of [VTC or Ventlab Holdings] with the authority to bind said entities.*" (ECF Nos. 167.11, 167.12 (emphasis added).) Furthermore, the Tolling Agreements specifically provided that "[VTC or Ventlab Holdings] may have additional claims or counterclaims against Lau or other parties" and included claims belonging to VTC or Ventlab Holdings in the definition of "Claims" that were subject to the Tolling Agreements. (ECF Nos. 167.11, 167.12.) Therefore, the Court rejects Martin's argument that the Tolling Agreements did not toll claims belonging to VTC.

33. The Court next addresses the statutes of limitations applicable to Plaintiffs' claims. "[W]hether a cause of action is barred by the statute of limitations is a mixed question of law and fact. When a defendant asserts the statute of limitations as an affirmative defense, the burden rests on the plaintiff to prove that his claims were timely filed." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 305, 603 S.E.2d 147, 162 (2004) (internal citations and quotations omitted).

34. With respect to the continuing wrong doctrine and its impact on a statute of limitations analysis, the North Carolina Supreme Court recently clarified that although the doctrine has sometimes been treated as an exception to the rules governing the operation of statutes of limitation, "such a description of the doctrine in question is a misnomer given that the 'continuing wrong' doctrine does nothing more than provide that the applicable limitations period starts anew in the event that an allegedly unlawful act is repeated." *Quality Built Homes Inc. v. Town of Carthage*, 371 N.C. 60, 70, 813 S.E.2d 218, 226 (2018). In other words, the continuing wrong

doctrine does not restart the statute of limitations period for earlier unlawful acts, it just provides that the limitations period starts anew for subsequently committed unlawful acts of the same nature.

35. For example, in *Marzec v. Nye*, the plaintiff's complaint was filed on June 4, 2008, and stated a breach of fiduciary duty claim against the defendant based on the defendant's failure to pay the plaintiff's salary. 203 N.C. App. 88, 93–94, 690 S.E.2d 537, 542 (2010). The defendant argued that any claim related to his failure to pay accrued on April 23, 2004, when the plaintiff sent his demand letter to the defendant requesting an accounting and back pay and was therefore untimely under the applicable three-year statute of limitation. *Id.* at 94, 690 S.E.2d at 542. The Court of Appeals, applying the continuing wrong doctrine, concluded that a new breach of fiduciary duty claim accrued each time the defendant failed to pay the plaintiff his monthly salary, and that the plaintiff's breach of fiduciary duty claim was timely as to the defendant's failure to pay the plaintiff's salary "during the three years preceding the filing of the action." *Id.* at 95, 690 S.E.2d at 542. Thus, the plaintiff could only pursue his breach of fiduciary duty claim as to failures of the defendant to pay his salary that accrued on or after June 4, 2005. *See Id.* The continuing wrong doctrine did not allow him to reach back beyond the three-year limitations period to earlier wrongs of the same nature. *Id.*

i. VTC's Claims for Conversion and Unjust Enrichment

36. VTC's claim for conversion is governed by a three-year statute of limitations which "generally begins running at the time a defendant asserts dominion

over the property." *Id.* at 96, 690 S.E.2d at 543. Likewise, VTC's unjust enrichment claim is also subject to a three-year statute of limitation. *Lockerman v. South River Elec. Mbrshp. Corp.*, 250 N.C. App. 631, 641, 794 S.E.2d 346, 355 (2016). Generally, neither claim is subject to a discovery rule. *White*, 166 N.C. App. at 309–311, 603 S.E.2d at 165–66 (concluding the discovery rule did not apply to a claim for conversion); *Lockerman v. South River Elec. Mbrshp. Corp.*, 2015 NCBC LEXIS 60, at *23–24 (N.C. Super. Ct. June 8, 2015) (concluding the discovery rule did not apply to an unjust enrichment claim and noting that "[t]he Court was unable to find any case that specifically applies the discovery rule to an unjust enrichment claim.")

37.    Here, Plaintiffs entered the 2015 Tolling Agreement with Martin on December 28, 2015. Thus, applying the three-year statute of limitations for conversion and unjust enrichment, VTC can only pursue claims for conversion for acts that accrued on or after December 28, 2012. To the extent VTC seeks to recover for alleged conversions or for unjust enrichment that occurred prior to December 28, 2012, Martin's motion for summary judgment should be GRANTED.

ii.    <u>VTC's Claims for Breach of Fiduciary Duty and Constructive Fraud</u>

38.    VTC's claim for breach of fiduciary duty is subject to a three-year statute of limitations. *Wilson v. Pershing, LLC*, 801 S.E.2d 150, 157–58 (N.C. Ct. App. 2017). VTC's claim for constructive fraud, which is based upon Martin's alleged breach of his fiduciary duty to VTC, is governed by a ten-year statute of limitations. *Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 67, 614 S.E.2d 328, 335 (2005) ("[a] claim of constructive fraud based upon a breach of fiduciary duty falls under the ten-

year statute of limitations contained in [N.C.G.S.] § 1-56 [ ].”); *Honeycutt v. Weaver*, 812 S.E.2d 859, 864 (N.C. Ct. App. 2018) (same). The statute of limitations on both claims, which are grounded in fraud, begins to run when the claimant knew or, by due diligence, should have known of the facts constituting the basis for the claim. *Piles v. Allstate Ins. Co.*, 187 N.C. App. 399, 403–04, 653 S.E.2d 181, 185 (2007).

39. Here, Plaintiffs' evidence is that VTC did not become aware of the conduct underlying Martin's breaches of fiduciary duty until May of 2013 when Bowen discussed excessive spending on VTC's corporate cards with Lau following the sale of VTC's assets. (ECF No. 159.2, at pp. 176–77, 182.) Martin, on the other hand, presents evidence that Lau was in charge of VTC and had knowledge of VTC's overall financial management so that Lau and VTC should have been aware of any breaches of duty related to the finances of the company much earlier than May 2013. (Martin Aff., at ¶ 19.) Thus, there is a genuine issue of material fact as to when VTC knew or should have known of the facts constituting the basis for its breach of fiduciary duty claim against Martin. This issue must be resolved by a jury. *Toomer*, 171 N.C. App. at 69, 614 S.E.2d at 336 (“If the materials before the court present a factual question as to when a plaintiff knew or should have known of the facts giving rise to the claim, then this issue must be submitted to the jury.”) Therefore, Martin's motion for

summary judgment based on a statute of limitations defense as to VTC's claims for breach of fiduciary duty and constructive fraud should be DENIED.

### iii. VTC's Claims for Constructive Trust and Civil Conspiracy

40. "The statute of limitations applicable to a constructive trust claim is ten years. When the basis for imposing a constructive trust is fraud or mistake, however, the statute of limitations is three years." *Lau v. Constable*, 2017 NCBC LEXIS 10, at *17 (N.C. Super. Ct. Feb. 7, 2017) (citing *Stratton v. Royal Bank of Can.*, 211 N.C. App. 78, 91–92, 712 S.E.2d 221, 232–33 (2011) (internal citations omitted)). To that end, a constructive trust is a remedy, not a standalone cause of action. *See Weatherford v. Keenan*, 128 N.C. App. 178, 179, 493 S.E.2d 812, 813 (1997) (citing *Roper v. Edwards,* 323 N.C. 461, 465, 373 S.E.2d 423, 425 (1988)). Accordingly, as a remedy, the imposition of a constructive trust is inherently linked to the statute of limitations of an underlying cause of action such as when "legal title to property is acquired through a breach of duty, fraud, or some other circumstance." *Cline v. Cline*, 297 N.C. 336, 343-44, 255 S.E.2d 399, 404 (1979); *see also Cody Creek Park, Inc. v. Capital One Servs., LLC,* 2017 U.S. Dist. LEXIS 115801, at *8 (M.D.N.C 2017) (stating: "[because] a constructive trust is a remedy under North Carolina law, the applicable statute of limitations for a claim seeking a constructive trust is the limitations for the underlying cause of action"). Similarly, the statute of limitations for a civil conspiracy claim is governed by the underlying claim that forms the basis

of the civil conspiracy claim. *BDM Invs. v. Lenhil, Inc.*, 2019 LEXIS 278, at *37 (N.C. Ct. App. 2019).

41.    Here, VTC can pursue the remedy of constructive trust and its claim for civil conspiracy in accord with the Court's findings on Martin's statute of limitations defenses as to each of VTC's underlying claims. As to VTC's remedy of constructive trust based on the conversion and unjust enrichment claims, VTC can pursue a constructive trust for claims that arose on or after December 28, 2012. Likewise, as to VTC's claim for civil conspiracy based on the conversion and unjust enrichment claims, VTC can only pursue claims that accrued on or after December 28, 2012. To the extent that VTC seeks the remedy of constructive trust for alleged conversions or any unjust enrichment by Martin that occurred before December 28, 2012, Martin's motion for summary judgment should be GRANTED. To the extent that VTC seeks to bring claims for civil conspiracy based on alleged conversions or unjust enrichment by Martin that occurred before December 28, 2012, Martin's motion for summary judgment should also be GRANTED.

42.    Further, as explained more thoroughly above, the statute of limitations for VTC's breach of fiduciary duty and constructive fraud claims did not begin to run until VTC knew or should have known about the facts giving rise to the claim. VTC has provided evidence that it was not aware of the alleged conduct giving rise to Martin's breaches of fiduciary duty until May 2013. (ECF No. 159.2, at pp. 176–77, 182). Conversely, Martin has presented evidence that Lau was in charge of VTC and should have known about the alleged breaches before May 2013. (Martin Aff., at ¶

19.) The Court has denied Martin's motion for summary judgment based on statute of limitations defenses as to VTC's claims for breach of fiduciary duty and constructive fraud. And VTC's claims for breach of fiduciary duty and constructive fraud could act as the basis for the imposition of a constructive trust or support a claim for civil conspiracy. Because the potential underlying claims—breach of fiduciary duty and constructive fraud—have survived, Martin's motion for summary judgment based on statute of limitations defenses as to VTC's claims for constructive trust and civil conspiracy should be DENIED.

## D. Genuine Issues of Material Fact Preclude an Award of Summary Judgment for VTC

### a. VTC's Claims for Breach of Fiduciary Duty and Constructive Fraud

43.    VTC argues that it should be granted summary judgment with respect to its claims for breach of fiduciary duty and constructive fraud because Martin owed and breached fiduciary duties to VTC. (ECF No. 156, at p. 14.) Claims for breach of fiduciary duty and claims for constructive fraud require the demonstration of a common fundamental element. To establish a claim for breach of fiduciary duty, a plaintiff must show that: (1) defendant owed plaintiff a fiduciary duty; (2) defendant breached his fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to plaintiff. *Farndale Co., LLC v. Gibellini*, 176 N.C. App. 60, 68, 628 S.E.2d 15, 20 (2006). To succeed on a constructive fraud claim, a plaintiff must show (1) a relationship of trust and confidence akin to that of a fiduciary, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that the plaintiff was injured as a result. *Sterner v. Penn,* 159 N.C. App. 626, 631,

583 S.E.2d 670, 674 (2003). Accordingly, like a breach a fiduciary duty claim "[c]onstructive fraud . . . arises in circumstances where a confidential relationship exists." *Terry v. Terry,* 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981).

44. VTC has alleged that Martin owed it fiduciary duties by operation of law. (ECF No. 156, at p. 14.) "In North Carolina, a fiduciary duty can arise by operation of law (*de jure*)." *Lockerman,* 250 N.C. App. at 635, 794 S.E.2d at 351 (citing *Abbitt v. Gregory,* 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). Principal and agent relationships are an example of a legal relation giving rise to *de jure* fiduciary duties. *Id. see also BDM Invs. v. Lenhil,* Inc., 2014 NCBC LEXIS 6, at *21 (N.C. Super. Ct. Mar. 20, 2014) (finding summary judgment to be inappropriate when there was a genuine dispute of material fact as to whether an agency relationship existed between the parties).

45. By statute, a corporate officer must discharge his duties "(1) [i]n good faith; (2) [w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) [i]n a manner he reasonably believes to be in the best interest of the corporation." N.C.G.S. § 55-8-42(a)(1)–(3). "A corporation can act only through its agents, which include its corporate officers." *Ellison v. Alexander,* 207 N.C. App. 401, 414, 700 S.E.2d 102, 111 (2010) (quoting *Woodson v. Rowland,* 329 N.C. 330, 344, 407 S.E.2d 222, 231 (1991)) (internal quotations omitted); *see also Meiselman v. Meiselman,* 58 N.C. App. 758, 775, 295 S.E.2d 249, 259 (1982)

(providing: "[o]fficers and directors shall be deemed to stand in a fiduciary relation to the corporation and to its shareholders") (citation omitted).

46. Here, Lau has introduced evidence that in the early 2000's, Martin was appointed President, a corporate officer, of VTC. (ECF No. 159.2, at p. 86; Martin Aff., at ¶ 11.) However, Martin has provided evidence showing that, while he retained the title of "President," Martin at no time took on the traditional duties of a corporate president and his title was merely "nominal." (Martin Aff., at ¶¶ 11-12.) Therefore, there is a genuine dispute of material fact as to whether Martin owed a *de jure* fiduciary duty to VTC.

47. VTC has also alleged that Martin owed fiduciary duties to VTC based on the reality of the parties' situation. (ECF No. 156, at p. 14.) North Carolina courts have recognized that a fiduciary relationship can be created by the surrounding facts or circumstances—giving rise to a *de facto* fiduciary relationship. *Lockerman,* 250 N.C. App at 635-37, 794 S.E.2d at 351-52. "*De facto* relationships are less immediately identifiable, as '[c]ourts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded.'" *Hager v. Smithfield E. Health Holdings, LLC,* 826 S.E.2d 567, 571–72 (N.C. Ct. App. 2019) (citing *Abbitt,* 201 N.C. at 598, 160 S.E. at 906). To be sure, "[t]he standard for finding a *de facto* fiduciary relationship is a demanding one: Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Id.* 826

S.E.2d at 572 (citing *Lockerman,* 250 N.C. App. at 636, 794 S.E.2d at 352) (internal quotations omitted).

48.    The evidence in the record regarding whether Martin had a *de facto* fiduciary duty is disputed.  Lau has provided evidence that a *de facto* fiduciary relationship was created when Lau gave Martin control of VTC while Lau was in China.  (ECF No. 159.2, at p. 53.)  In addition, Lau has provided evidence that Martin agreed to oversee the American operation and protect VTC's interest.  *Id.*  Conversely, Martin has pointed to evidence indicating that Lau always "remained 'the man in charge,' just as he always remained the majority shareholder and guiding force." (Martin Aff., at ¶ 12.)  Therefore, there is a factual dispute as to whether Martin "figuratively held all the cards" creating a *de facto* fiduciary duty.  *Lockerman,* 250 N.C. App. at 636, 794 S.E.2d at 352 (upholding a trial court's grant of summary judgment in defendant's favor with respect to plaintiff's claim of a *de facto* fiduciary duty when plaintiff exercised some control over the disputed transaction and could not show that defendant "figuratively held all the cards").  Based on the record before the Court, there is a genuine dispute of material fact as to whether Martin owed fiduciary duties to VTC.  Therefore, VTC's motion for summary judgment on its claims for breach of fiduciary duty and constructive fraud should be DENIED.

b.  VTC's Claim for Conversion

49.    VTC argues that it is entitled to summary judgment because Martin wrongfully transferred funds from VTC to Martin through (1) the self-dealing entities; (2) the improper use of VTC's credit cards; and (3) by improperly diverting

VTC sale proceeds. (ECF No. 156, at p. 21.) North Carolina courts have held that, "[t]he tort of conversion is well defined as an 'unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Variety Wholesalers,* 365 N.C. at 523, 723 S.E.2d at 747 (citation omitted). Essentially, conversion requires the establishment of two elements: "ownership in the plaintiff and wrongful possession or conversion by the defendant." *Id.* Here, Lau has provided evidence, via the Fahey Report, that Martin was the recipient of hundreds of thousands of dollars that rightfully belonged in the hands of VTC. (*See generally,* ECF No. 159.4, at pp. 1–120.) Martin, however, has brought forth evidence tending to show that he was never in wrongful possession of any funds belonging to VTC. (Martin Aff., at ¶¶ 35–42, 47–55.)

50. Additionally, Lau has presented evidence that VTC's policy was that no personal expenses were to be paid with company funds and that he was unaware that Martin was using company cards for personal expenses. (ECF No. 159.2, at pp. 115, 170.) Martin has admitted to using company credit cards and company funds for personal expenses. (Martin Aff., at ¶ 24.) However, Martin has provided at least some evidence that Lau was aware of, participated in, and consented to these personal expenditures of company funds. (Martin Aff., at ¶¶ 21–23.) In addition, Martin has provided that these expenditures were accounted for annually or

quarterly by conducting "square-ups."[3]  (*Id.*)  Therefore, genuine issues of material fact exist regarding VTC's claim for conversion, and VTC's motion for summary judgment as to its claim for conversion should be DENIED.

      c.  <u>VTC's Claim for Unjust Enrichment</u>

51.    Plaintiffs argue that summary judgment should be granted in their favor on VTC's claim for unjust enrichment because Martin will be unjustly enriched as a result of his actions.  (ECF No. 156, at pp. 25–26.)

52.    In North Carolina, to recover on a claim of unjust enrichment, a plaintiff must prove: (1) that it conferred a benefit on another party; (2) that the other party consciously accepted the benefit; and (3) that the benefit was not conferred gratuitously or by an interference in the affairs of the other party.  *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002).

53.    VTC's claim for unjust enrichment rests on the same evidence as VTC's claim for conversion.  (ECF No. 156, at p. 26.)  Accordingly, because the Court has determined that there is a genuine dispute as to the facts forming the basis for VTC's claim for conversion, Plaintiffs' motion for summary judgment on VTC's claim for unjust enrichment must also be DENIED.

      d.  <u>VTC's Claim for Constructive Trust</u>

54.    Plaintiffs also contend that VTC is entitled to summary judgment on its claims for constructive trust.  (ECF No. 156, at p. 26.)  At day's end, "the ultimate

---

[3] Martin states that company managers would reimburse the Company for personal expenses by "squaring up."  (Martin Aff., at ¶ 21.)  Squaring up entailed taking less of a distribution that otherwise was due to offset personal charges.  (*Id.*)

decision whether to impose a constructive trust as an equitable remedy . . . rest[s] in the discretion of the trial court." *Variety Wholesalers, Inc.*, 365 N.C. at 531, 723 S.E.2d at 752. Moreover, "[a] request for a constructive trust may not stand on its own absent a cause of action for which it is an appropriate remedy." *In re Southeastern Eye Center-Pending Matters,* 2019 NCBC LEXIS 29, at *83 (N.C. Super. Ct. May 7, 2019) (citation omitted).

55. In this case, Martin has raised issues of material fact concerning the facts supporting VTC's claims for breach of fiduciary duty, constructive fraud, conversion, and unjust enrichment. Accordingly, summary judgment is improper on all of VTC's underlying claims and necessarily improper on the remedy of constructive trust as applied to any of VTC's claims. Therefore, VTC's motion for summary judgment in its favor on the claim of constructive trust should be DENIED.

e. VTC's Claim for Civil Conspiracy

56. Finally, Plaintiffs argue that VTC is entitled to summary judgment on its claim that Martin and Constable were engaged in a civil conspiracy. (ECF No. 156, at p. 27.) There are three elements of a claim for civil conspiracy: (1) two or more persons agree to do a wrongful act; (2) those persons commit an overt act in furtherance of the agreement; and (3) the plaintiff is harmed as a result. *Pleasant Valley Promenade v. Lechmere, Inc.,* 120 N.C. App. 650, 657, 464 S.E.2d 47, 54 (1995). An independent cause of action for civil conspiracy is not recognized in North Carolina. *Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002). Only

where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy[.]" *Id.*

57.    On each of VTC's underlying claims—breach of fiduciary duty, constructive fraud, conversion, and unjust enrichment—the Court has determined that genuine issues of material fact exist. Consequently, summary judgment is improper with respect to each claim that could form the basis or "the underlying wrong" for VTC's civil conspiracy claim.

58.    More precisely, the evidence in the record cuts both ways regarding whether Martin participated in, agreed to, or even knew that wrongs were being perpetrated against VTC.  Lau has produced evidence tending to show that Martin was acting in concert with Constable to carry-out the alleged improper acts at issue. (ECF No. 159.5, at pp. 123–32; ECF No. 159.4, at pp. 1–120.)  Conversely, Martin presents evidence tending to show that he was unattuned to and not involved with the Company's finances, which were the province of Constable.  (Martin Aff., at ¶ 18; James Cochie Aff., ECF No. 161 at pdf. pp. 309-11, ¶ 4; Chris Reed Aff., ECF No. 161, at pdf. pp. 312-15, ¶ 4.)  Accordingly, there is a genuine issue of material fact as to whether Martin was in agreement with or even knew what Constable was up to. Therefore, at this time the Court cannot grant summary judgment in favor of VTC on its claim for civil conspiracy.

THEREFORE, IT IS ORDERED that:

1.    Martin's motion for summary judgment seeking dismissal of Lau's individual claims against Martin for unjust enrichment, civil conspiracy,

and constructive trust is GRANTED, Plaintiffs' motion for summary judgment in Lau's favor as to liability on Lau's claims against Martin is DENIED, and Lau's individual claims for unjust enrichment, civil conspiracy, and constructive trust are DISMISSED.

2. Martin's motion for summary judgment in his favor on the basis that each of VTC's claims are barred by the affirmative defense of *in pari delicto* is DENIED.

3. Martin's motion for summary judgment in his favor on the basis that each of VTC's claims are barred by the affirmative defense of contributory negligence is DENIED.

4. Martin's motion for summary judgment in his favor on the basis that VTC's claims for conversion and unjust enrichment are barred by the applicable statute of limitations is GRANTED in part, with respect to allegations of conversion and unjust enrichment occurring prior to December 28, 2012. As to allegations of conversion and unjust enrichment occurring after December 28, 2012, Martin's Motion for summary judgment in his favor based on the applicable statute of limitations is DENIED.

5. Martin's motion for summary judgment in his favor on the basis that VTC's claims for breach of fiduciary duty and constructive fraud are barred by the statute of limitations is DENIED.

6. Martin's motion for summary judgment in his favor on the basis that VTC's claims for constructive trust and civil conspiracy are barred by the

statute of limitations is GRANTED in part with respect to the allegations of conversion and unjust enrichment occurring prior to December 28, 2012. With regard to VTC's claims for constructive trust and civil conspiracy based on the allegations of conversion and unjust enrichment occurring after December 28, 2012, Martin's motion for summary judgment in his favor is DENIED.

7.    To the extent that Martin seeks summary judgement in his favor on the basis that VTC's claims for constructive trust and civil conspiracy, based on its claims for breach of fiduciary duty and constructive fraud, are barred by the statute of limitations, Martin's Motion for summary judgment is DENIED.

8.    Plaintiffs' motion for summary judgment in VTC's favor as to liability on VTC's claims for breach of fiduciary, constructive fraud, conversion, unjust enrichment, and civil conspiracy duty is DENIED.


SO ORDERED, this, the 24th day of September, 2019.


/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases